496 So.2d 465 (1986)
ROBERT INVESTMENT CO., INC.
v.
EASTBANK, INC.
No. 85CA0714.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
*467 Ryland Percy, Gonzales, for Robert Investment appellee.
R. Keith Colvin, Baton Rouge, for Eastbank, Inc. appellant.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a judgment granting a permanent injunction prohibiting defendant, Eastbank, Inc. (Eastbank), from obstructing plaintiff's, Robert Investment Company, Inc. (Robert Investment), use of a parking area located in the Eastbank Shopping Center.
By Act of Cash Sale, dated April 2, 1970, plaintiff's ancestor-in-title, Roland J. Robert, Distributor, Inc., purchased a 200' × 200' lot at the northwest corner of the intersection of Louisiana Highways 44 and 30 in Gonzales, Louisiana, from defendant, Eastbank.[1] The lot conveyed lies adjacent to and adjoins the Eastbank Shopping Center. Driveways connect the lot to the shopping center. Additionally, the lot conveyed has direct access to both state highways, independent of the shopping center.
The Act of Cash Sale prepared by Donald Bradford, defendant's attorney, described the property according to a perimeter survey by Alex Theriot, Jr., dated January 21, *468 1969,[2] which was also used to prepare the Site Plan of the Eastbank Shopping Center and the adjoining areas. The Act of Cash Sale established certain building restrictions, including a provision prohibiting Eastbank from selling, leasing or permitting the use of the area designated on the attached Site Plan as "the Shopping Center Area" as a service station.[3] In further defining the area within which no service station could be constructed, the parties attached to the Act of Cash Sale the following Site Plan of Eastbank Shopping Center which enclosed the restricted area within a red line.
The Site Plan of the shopping center shows various proposed improvements, including buildings and parking areas. Among the proposed improvements shown on the Site Plan was an undefined area north of the tract sold to plaintiff's ancestor-in-title which was designated as "Future Parking."[4]
Neither the Act of Cash Sale, the Theriot survey, nor the Site Plan contain the words "servitude," "right of use," "common," "public," "private," or any other words evidencing any express intention to create a servitude of "parking."
Thereafter, the property was conveyed several times to various business entities owned by the Robert family. By Act of Exchange dated January 1, 1977, Robert Investment acquired the subject property.
Shortly thereafter, Robert Investment constructed its place of business on the property, and Eastbank constructed the parking area in question adjacent to plaintiff's property. Plaintiff later poured concrete ramps to provide access to the Eastbank parking area from its place of business. Employees and customers of Robert Investment have used the parking area in question since the construction of those ramps.
On July 16, 1984, Eastbank commenced construction of a fence across the rear of Robert Investment's property, which would have denied access to the shopping center parking area from Robert Investment's property. Robert Investment sought and obtained a temporary restraining order and subsequently a permanent injunction prohibiting Eastbank from obstructing its use of the parking area.
From the trial court's judgment granting Robert Investment an injunction, Eastbank appeals, raising the following issues:
1. Whether a servitude of parking in favor of the plaintiff was created by title through the Act of Cash Sale to plaintiff's ancestor-in-title;
2. Whether parol evidence should have been admitted to modify the terms of the Act of Cash Sale to plaintiff's ancestor-in-title;
3. Whether a servitude of parking in favor of the plaintiff was created by implication in the Act of Cash Sale to plaintiff's ancestor-in-title;
4. Whether the Act of Cash Sale should be reformed based upon a mere preponderance of the evidence without proof of the strongest possible type; and
5. Whether the permanent injunction should be vacated because it fails to specify the acts sought to be restrained?

Establishment of a Predial Servitude by Title
Defendant contends that the Act of Cash Sale did not create a servitude of parking in favor of plaintiff.
*469 Conventional predial servitudes affecting immovable property which are created by agreement between the parties must be in writing. LSA-C.C. art. 2440; Dallas v. Farrington, 490 So.2d 265 (La.1986). They may be established by all acts by which immovables may be transferred. LSA-C.C. art. 722. In order to claim a servitude under a title, the title must be express as to the nature and extent of the servitude created. Parish v. Municipality No. 2, 8 La.Ann. 145 (1853). Any doubt as to the existence of a predial servitude must be resolved in favor of the servient estate. LSA-C.C. art. 730.
The Supreme Court has consistently required that the creation of a servitude be free from doubt. In Buras Ice Factory v. Department of Highways of Louisiana, 235 La. 158, 103 So.2d 74 (1958), the court stated:
`Servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law. In consequence of this servitudes claimed under titles, are never sustained by implicationthe title creating them must be express, as to their nature and extent, as well as to the estate which owes them, and the estate to which they are due.' Parish v. Municipality No. 2, 8 La.Ann. 145 (cited with approval in Gottschalk v. De Santos, 12 La.Ann. 473, 475 and Declouet v. Borel, 15 La.Ann. 606). [103 So.2d 80]
In the instant case, the Act of Cash Sale does not refer to a servitude of use for parking or for any other related activity. Additionally, neither the Theriot survey nor the Site Plan contain a grant of any kind of servitude.
The trial judge determined, and we agree, that a predial servitude was not established by title.

Establishment of a Predial Servitude by Implication
Having determined that no express servitude is created by title, the question remaining is whether the designation of an area as "future parking" on a Site Plan suffices to create a servitude of use for parking for Robert Investment.
The establishment of a servitude by implication has been permitted only under a very limited set of circumstances, none of which are present in the instant case. In James v. Delery, 211 La. 306, 29 So.2d 858 (1947), and Iseringhausen v. Larcade, 147 La. 515, 85 So. 224 (1920), it was clearly set forth that a servitude by implication can only be found where the servitude is shown on a recorded survey map pursuant to which the property is sold and described, and the language in the deed or on the survey map clearly expresses the intention to establish a servitude for the benefit of owners of neighboring property, by use of words such as "common," "public," or such other designation.
In finding that a servitude by implication had been established, the trial judge relied on several cases holding that where a servitude is designated on a development plat and property is sold with reference to the map, a servitude is created by title, citing James v. Delery, supra; Iseringhausen v. Larcade, supra; and Tate v. South Central Bell Telephone Co., 386 So.2d 139 (La.App. 3rd Cir.1980).
However, these cases are readily distinguishable from the instant case. In Buras Ice Factory v. Department of Highways of Louisiana, supra, the Supreme Court limited the holdings of Iseringhausen v. Larcade, supra, and James v. Delery, supra, stating:
They stand only for the well recognized principle that ` * * * when the owner of a tract of land subdivides it into lots, designates on the map or survey of the subdivision streets or roads, and then sells the property or any portion of it with reference to such map, he thereby creates by title a servitude of passage over the streets or roads as shown on the map. * * *' In each of those cases it clearly appears that the servitude of passage therein recognized related to a public road for the benefit of purchasers of lots in the subdivision, so designated on *470 the recorded surveyor's plat. [103 So.2d 80].
The trial court also relies upon Tate v. South Central Bell Co., supra, for the creation of a servitude where it is shown on an attached plat although not mentioned in the act of sale. However, Tate involved a single tract of land and a survey plat which designated a servitude across the property, which is factually distinguishable from the instant case. In the instant case, there is no clear indication on the Site Plan or in the Act of Cash Sale that a servitude was intended.
From the language in the Act of Cash Sale from Eastbank to Robert Investment's ancestor-in-title, it is clear that the attachment of the Site Plan of the shopping center area was to delineate the restriction and to establish the area within which Eastbank was precluded from selling, leasing or permitting the use of that area for the selling of gasoline and that the Site Plan was not made part of the Act of Cash Sale to establish a servitude.
A review of the plan reveals that the parking area in question and the plaintiff's property are adjacent to one another and are separated by a solid line on the plan, without any indication of the proposed construction of a driveway (such as plaintiff subsequently constructed) connecting the two tracts. Additionally, the portion of Area "A" sold to Robert Investment is not an integral part of the shopping center such as the area designated as A & P, TG & Y, etc. The area purchased by Robert Investment is designated as a "(Reserved) Area `A'"in the southeast corner of the plan and, although adjoining the shopping center property, is clearly not a part of the development in the same sense as the A & P and TG & Y facilities. There are also at least two other areas on the plan with the designation "(Reserved)" being Areas "B" and "E." However, a heavy darkened line is drawn around the "Shopping Center area," including other reserved areas, but excluding Area "A."
Although plaintiff may have incorrectly assumed that the adjoining shopping center would be developed in accordance with the Site Plan, we can find no language nor other legally admissible evidence requiring Eastbank to develop the shopping center, build or maintain the area designated as parking or future parking or do anything other than comply with the terms of the April 2, 1970 Act of Cash Sale.
Neither the Act of Cash Sale, the Theriot survey nor the Site Plan contain the words "servitude," "right of way," "common," "public," or any other words or language evidencing any intention to create a servitude of use for parking. Considering all evidence of record, it is clear that the Site Plan was attached to denote the location of the property being conveyed and to establish the shopping center area wherein gasoline sales, etc. were prohibited by Eastbank, its vendees and lessees. Had the parties contemplated or intended to establish a servitude, it would have been a simple matter to put in the Act of Cash Sale language that vendor guarantees vendee equal access to area in the shopping center area designated as "parking" or "future parking" or that vendor guaranteed to vendee a servitude of use for parking the area designated on the Site Plan as "future parking." This, however, was not done.
Clearly, the Act of Cash Sale and attached Site Plan in the instant case do not indicate that plaintiff was acquiring any rights to or servitudes of the parking area in question, and it was not established that the use of the area designated as "Future Parking" was essential to the use and enjoyment of plaintiff's property. Considering the size of Area "A" and the access to two state highways, although use of the "Future Parking" area might be desirable and advantageous to plaintiff, it is not essential to the utilization of Area "A."
A factual situation similar to the instant case is also found in Richardson v. Liberty Oil Co., 143 La. 130, 78 So. 326 (1918), where a canal servitude was unsuccessfully claimed by an owner of land who had bought according to a plat which showed his property as being adjacent to the canal. Therein, the Supreme Court noted that:

*471 A railway company may sell land adjoining its right of way without dedicating or imposing servitudes upon the strip so described, in which it owns but a limited fee, and equally may a canal company, or a canal and road company, sell land adjoining the tract upon which its canal and road are constructed, and of which it is the full owner, without of necessity subjecting such tract to servitudes in favor of its vendees, or the public. [78 So. 331]
Based upon the foregoing, we find that the trial judge erred in determining that "the conveyance of a servitude was clearly intended by the parties in the original transfer of the property," basing his finding in part upon the attached plat which designated certain areas of the shopping center, including the area in question, as "parking" or "future parking." We conclude that a servitude of use for parking in favor of plaintiff or his ancestor-in-title was not established by implication.

Admissibility of Parol Evidence to Modify Terms of Act of Cash Sale
Defendant contends that the trial judge erred in admitting parol evidence to interpret the terms of the Act of Cash Sale.
In admitting the parol evidence, the trial judge determined that the attachment of the Site Plan to the Act of Cash Sale created an ambiguity as to the creation vel non of a servitude of use for parking. In support of his admission of parol evidence, the trial judge relied on Gulf States Finance Corporation v. Airline Auto Sales Incorporated, 248 La. 591, 181 So.2d 36 (1965); Goldsmith v. Parsons, 182 La. 122, 161 So. 175 (1935); and Gautreau v. Modern Finance Company of Gonzales, Inc., 357 So.2d 871 (La.App. 1st Cir.1978), each of which hold, as an exception to the "parol evidence rule" (LSA-C.C. art. 1848, formerly art. 2276), that parol evidence is admissible "to explain existing ambiguity when the explanation sought to be offered is not inconsistent with" the written terms of the act.
We disagree. The Gulf States Finance Corporation and Goldsmith cases involve promissory notes. The Gautreau case pertains to the redemption of corporate debentures. These cases are not authority for the admission of parol evidence to interpret the terms of an Act of Cash Sale. Although parol evidence is admissible in limited situations to clarify patent ambiguities, there are no ambiguities in this case which would render parol evidence admissible.
The following articles of the Louisiana Civil Code are applicable:
Article 1839, former article 2275.
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.
Article 1848, former article 2276.
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
These provisions prohibit the introduction of parol evidence to vary, alter or contradict the terms of a contract which is required to be in writing. Andrew Development Corp. v. West Esplanade Corporation, 347 So.2d 210 (La.1977); Meeks v. Romen Petroleum, Inc., 452 So.2d 1191 (La.App. 1st Cir.1984), writ denied 457 So.2d 13 (La.1984). Predial servitudes are classified in the Civil Code as incorporeal immovables and are subject to codal articles respecting immovable property. LSA-C.C. arts. 649, 708, and 722.
Although LSA-C.C. art. 1848 precludes parol evidence to change the content *472 of authentic acts or acts under private signature, exceptions to the parol evidence rule permit the use of such evidence in limited situations. See Brumfield v. Brumfield, 457 So.2d 763 (La.App. 1st Cir.1984).
In the case sub judice, plaintiff introduced parol evidence to clarify the meaning of the conveyance documents. Plaintiff reasons that the evidence was necessary to explain an existing ambiguity and to show that the written instrument is but a part of the entire oral agreement.
While there are exceptions to the parol evidence rule, they are inapplicable to the instant case. The written agreement is clear and unambiguous. The contract as written sets forth obligations of both parties. As we have previously noted, neither the Act of Cash Sale nor the Site Plan indicates that a servitude of use for parking was created as concerns Area "A." Plaintiff also seeks to introduce evidence of an additional oral obligation on the part of defendant. However, as we have previously noted, predial servitudes affecting immovable property, which are created by agreement between the parties, must be in writing. Parol evidence is not admissible to modify a written instrument pertaining to the establishment of a predial servitude.
The trial judge erred in admitting parol evidence to interpret the Act of Cash Sale under the circumstances presented herein.

Reformation of the Deed
The issue as to the reformation of the Act of Cash Sale is, in reality, two issues: prescription and burden of proof. With regard to prescription, the reformation of an instrument is a personal action and is subject to the ten-year prescriptive period set forth in LSA-C.C. art. 3499. New Hotel Monteleone, Inc. v. First National Bank of Commerce, Inc., 423 So.2d 1305 (La.App. 4th Cir.1982). The prescriptive period begins to run from the discovery of the error. Vallee v. Vallee, 180 So.2d 570 (La.App. 3rd Cir.1965). Where the error is obvious from the face of the instrument, prescription begins to run from the date of execution. New Hotel Monteleone, Inc. v. First National Bank of Commerce, Inc., supra.
In the instant case, it was obvious from the face of the Act of Cash Sale with attached Site Plan that no servitude of use for parking was set forth in the instrument. Therefore, the prescriptive period began April 2, 1970 (the date of execution). Consequently, any action to reform the instrument prescribed on April 2, 1980, more than four years before the instant suit was filed.
As to the necessary burden of proof, the law is clear: the person seeking reformation of an instrument has the burden to establish mutual error and mistake by clear, and the strongest possible, proof. Wilson v. Levy, 234 La. 719, 101 So.2d 214 (La.1958). Applying this yardstick to the evidence in the case sub judice leads us to the inescapable conclusion that plaintiff has failed in establishing by legal evidence mutual error or mistake. Plaintiff may have believed that he had access to the shopping center parking lot, but nothing in the deed so provided, and defendants testified unequivocally that they had no such intention or belief.

Permanent Injunction
Considering our treatment of the above issues, this issue is moot.

Attorney's Fees
As to the contention that defendant is entitled to attorney's fees for the dissolution of the temporary restraining order, we note that LSA-C.C.P. art. 3608 provides for awarding attorney's fees "in connection with the dissolution of a restraining order or preliminary injunction." Therefore, the defendant is entitled to an award of reasonable attorney's fees, which we fix at $1,500.00.

CONCLUSION
For the above reasons, the judgment of the trial court is reversed, and the permanent injunction is dissolved. Judgment is rendered in favor of defendant and against *473 plaintiff in the sum of $1,500.00. All costs of this appeal are assessed against plaintiff, Robert Investment.
REVERSED AND RENDERED.
NOTES
[1] The Act of Cash Sale from Eastbank, Inc. to Roland J. Robert, Distributor, Inc. describes the property as follows:

A certain tract or parcel of ground, situated in the Parish of Ascension, Louisiana, in Section 32, Township 9 South, Range 3 East, and being a portion of a larger tract shown on map of survey by Alex Theriot, Jr., dated January 21, 1969, recorded in Conveyance Book 215, Entry 98872, Official Records of the Parish of Ascension, Louisiana, which property herein described is taken from the southeastern corner of the larger tract described on the aforesaid map, and which tract herein described is more particularly described as follows:
Commence at a point common to the corners of Sections 19 and 20, Township 10 South, Range 3 East, and Sections 32 and 33, Township 9 South, Range 3 East; thence South 89° 28' West a distance of 54.6 feet along the center line of Louisiana Highway 30 (Nicholson Drive) to a point and corner; thence North 0° 182c West a distance of 60 feet to a point and corner which is located on the Northern right of way of Louisiana Highway 30 (Nicholson Drive), which point is the point of beginning; thence North 44° 392c East a distance of 77.1 feet to a point and corner; thence North 0° 182c West a distance of 145.6 feet to a point and corner; thence South 89° 282c West a distance of 200 feet to a point and corner; thence South 0° 182c East a distance of 200 feet to a point and corner, which is located on the Northern right of way of Louisiana Highway 30 (Nicholson Drive); thence along the Northern edge of said highway North 89° 282c East a distance of 145.6 feet to the point of beginning.
Seller agrees that it shall not sell, lease, or permit the use of that area designated on the attached plot plan as the Shopping Center Area by a private branded, cut-rate, or independent oil company or distributing company for the purpose of selling gasoline through service stations in the shopping center area described on the attached plot plan. This restriction shall constitute a covenant running with the land. Seller shall not sell, lease nor permit the use of the shopping center area to a major oil company for the purpose of selling gasoline through service stations on the shopping center area described on the attached plot plan for a period of five (5) years from the date of this sale. This restriction shall constitute a covenant running with the land.
In no event shall seller sell, lease or permit a major oil company for the purpose of selling gasoline through service stations on Louisiana Highway 30 within 800 feet frontage on Highway 30 from the property being conveyed.
No building shall be constructed any closer than fifty (50) feet to the northern right of way line of Louisiana Highway 30. This restriction, however, should not apply to pump islands and canopies over pump islands for a service station. This restriction shall constitute a covenant running with the land.
The property herein conveyed shall not be used for a supermarket, self-service grocery store, meat market, produce market, grocery store or bakery. This restriction shall also constitute a covenant running with the land.
[2] See footnote 1, supra.
[3] The Act of Cash Sale refers to the Site Plan in two instances where it twice defines the restricted area as the "shopping center area described in the attached plot plan." No other reference is made to the Site Plan attached to the Act of Cash Sale.
[4] The Site Plan also contained the reservation as follows:

The land data as to building/open area is subject to modification to conform to leasing; however, landlord guarantees minimum of 5 car spaces per 1,000 sq. ft. of ground floor area.
This stipulation, however, obviously refers to the space leased to such concerns as TG & Y, A & P, etc. since the word "landlord" is used.