WARD, Judge.
The principal issue in this appeal is the width and location of a contractual servitude of passage which crosses the defend *782 ants’ property. The parties, proceedings, and background facts necessary for an understanding of this case were described by the Trial Court in its Reasons for Judgment:
Plaintiff, Village Plaza Partnership is the owner of a certain lot of ground, and a shopping center thereon, which is designated as Lot M-2A on a plat of survey by Gandolfo, Kuhn, and Associates dated December 20, 1972. Lot M-2A is located at 4655 Michoud Boulevard about ⅝ block from its intersection with Chef Menteur Highway on the Gentilly Road side. Defendants, Steven J. Brandt, Deborah Giardina Brandt, Mildred B. Brandt, and Joseph M. Brandt are the owners of a lot designated as Lot M-1A on the same survey, at which site a car care center is operated. Along the left side of the lot owned by the defendants there exists an asphalt road which has been regularly used in the past by plaintiffs shopping center customers to gain access to and from the shopping center via Chef Menteur Highway.
Village Plaza Partnership brings this action seeking injunctive relief on the grounds that the asphalt road running along the left side of defendants’ property is a servitude and right of passage which was established in its favor and which has been obstructed by defendants so as to prohibit the use of the road by its shopping center customers. In particular, it is alleged that barricades and blockades have been erected, that raised and slanted asphalt and cement drives and a concrete parking area extending over the asphalt road have been built, and that defendants have wrongfully removed the shopping center light standards from the plaintiff’s servitude. Defendants have answered the plaintiff’s suit denying the existence of a servitude of passage in favor of the Village Plaza Partnership. Alternatively, a reconven-tional demand setting out a cause of action for injunctive relief is made, in the case that the Court should find that a servitude of passage exists. In their re-conventional demand defendants allege that plaintiff has violated the terms and conditions of the servitude of passage in that the plaintiff’s shopping center sign placed on defendants’ property and the asphalt roadway are outside of the area described for their placement by an act of servitude of passage passed on February 28, 1973 before Camille A. Cutrone, Notary Public, by and between New Orleans East, Inc. and Montglen Enterprises, Inc. plaintiff’s ancestor in title. They also allege that signs in addition to the one authorized by the act of servitude of passage agreement have been placed on the defendants’ property.
* * # * ⅜ *
Historically, both Lot M-2A owned by plaintiff, and lot M-1A owned by defendants were owned by New Orleans East, Inc. On May 28, 1971 New Orleans East, Inc. granted unto the City of New Orleans a 40' right of way over [both lots] for the use and benefit of the Sewerage and Water Board. Attached to the grant of right of way was a plat of a plan of resubdivision which depicted the Sewerage and Water Board’s right of way and referenced it as a “Proposed Roadway and Sewerage and Water Board Servitude.” On February 15,1973 New Orleans East, Inc. filed a declaration of title change with a plan of resub-division of Lots M-l and M-2 into Lots M-1A and M-2A. On that plan it is indicated that the shaded area [on Lot M-1A] “denotes portion of 40' S. & W.B. servitude required for roadway access servitude for Lot M-2A.”
On February 28, 1973, New Orleans East, Inc. sold Lot M-2A to plaintiff’s ancestor in title, Montglen Enterprises, Inc. Contemporaneously therewith, an act of servitude of passage was executed by New Orleans East, Inc. to Montglen Enterprises, Inc., its successors and assigns. That act of servitude of passage also provided for the placement of accessory lighting and the placement of a shopping center sign.
*783 Before considering the merits of Village Plaza's suit, the Trial Court appointed a land surveyor, Walker and Avery, Inc., to survey the property and to determine the location of Village Plaza’s servitude. John E. Walker presented his survey to the court at a hearing during which counsel and the Trial Judge questioned him regarding his findings. After hearing Mr. Walker’s testimony, the Trial Judge accepted the Walker and Avery survey which found that Village Plaza’s servitude was a twenty-eight foot wide strip along the western boundary of the Sewerage & Water Board right of way and that the asphalt road, light standards and sign did not comply with the servitude agreement. In ruling in accordance with the Walker and Avery survey, however, the Trial Judge reserved final judgment until after trial on the merits.
At trial, further expert testimony was presented, persuading the Trial Judge to change his previous ruling. Although he agreed with the experts that the documentary evidence was conflicting with regard to the width of the servitude, he ruled in favor of Village Plaza, apparently finding that the servitude of passage was established by the February 15,1973 Declaration of Title Change by New Orleans East. He held that the servitude across defendants’ property was co-extensive with the forty foot wide Sewerage & Water Board right of way, and he granted a permanent injunction and an order requiring defendants to remove all obstructions from the roadway.
It is from this judgment that defendants appeal. We reverse upon defendants’ contention that the Trial Judge erred in finding that Village Plaza proved the servitude is co-extensive with the Sewerage & Water Board right of way. This result makes it unnecessary to reach other issues raised by defendants.
The resolution of the primary issue in this appeal requires that we determine which instrument created the servitude of passage in favor of Village Plaza. The Trial Court’s Reasons for Judgment indicate it found that the servitude was established by the February 15, 1973 “Declaration of Title Change by Subdivision” filed by New Orleans East prior to the sale of Lot M-2A. No servitude was mentioned in the body of that Declaration, but the Gan-dolfo, Kuhn survey annexed to the Declaration and expressly made part of the title chain shows the Sewerage & Water Board servitude across Lot M-1A with the legend “denotes portion of 40' Sewerage & Water Board servitude required for Roadway Access Servitude for Lot M-2A.”
We do not believe this language is sufficient to create a servitude of passage in favor of Lot M-2A across Lot M-1A. Rather, by the use of the word “required,” it shows that the parties merely intended that a future servitude of passage could be established from that portion of Lot M-1A already burdened with the Sewerage & Water Board servitude. This conclusion is reinforced by the fact that New Orleans East executed an agreement captioned “Servitude of Passage” when it sold Lot M-2A to Montglen thirteen days after filing the Declaration of Title Change.
In Robert Investment Co. v. Eastbank, Inc., 496 So.2d 465 (La.App. 1st Cir.1986), the First Circuit carefully considered the issue of the establishment of a servitude under facts very similar to those in the case before us. In the First Circuit case, the defendant sold property to the plaintiff’s ancestor in title, attaching to the act of sale a site plan which designated an area for “Future Parking”. The Court held this designation insufficient to create a servitude. Although in our case the Gandolfo, Kuhn survey attached to the Declaration contains a designation more explicit than that in Robert Investment, under the rationale of that case, we find no evidence of the required express intention to create a servitude.
Civil Code Article 708 states that: “The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of im-movables apply.” Article 722 similarly provides: “Predial servitudes are established by all acts by which immovables may be transferred.” These articles were enacted *784 after the 1973 Declaration which is under consideration here, but it has long been the law that although “[n]o sacramental or orthodox form or language is necessary to grant a servitude ... [i]t is only necessary that the parties make clear their intention in the instrument to establish one.” Noel Estate, Inc. v. Southern & Gulf Railway, 187 La. 717, 723, 175 So. 468, 470 (1937). See also, Buras Ice Factory, Inc. v. Department of Highways, 235 La. 158, 175, 103 So.2d 74, 80 (1958) in which the Court stated:
Servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law. In consequence of this, servitudes claimed under titles are never sustained by implication — the title creating them must be express, as to their nature and extent, as well as to the estate which owes them, and the estate to which they are due. [Citations omitted.]
Village Plaza relies upon the jurispruden-cial rule that when the owner of a tract of land subdivides it into lots and designates roads on the plat of the subdivision and then sells the property with reference to the plat, he thereby creates a servitude of passage over the roads as shown on the plat. James v. Delery, 211 La. 306, 29 So.2d 858 (1947). This rule, Village Plaza asserts, supports the Trial Judge’s holding that the servitude of passage was established by the Declaration of Title Change. We disagree because an instrument which creates a servitude, whether a recorded plat of subdivision or a contract, must clearly show the intention to create the servitude. The plat filed with the subdivision by New Orleans East did not designate a road but merely denoted the area required for a future roadway access servitude, which was in fact created a few days after the subdivision of the property. Hence, we find the Declaration of Title Change by Subdivision lacks the necessary showing of intent to create a servitude of passage. This conclusion is supported by the Robert Investment case which held that the establishment of a servitude by implication under the James v. Delery rule is permitted “only under a very limited set of circumstances_” 496 So.2d 465 at 469, citing Buras Ice Factory v. Department of Highways.
We also distinguish Becnel v. Citrus Lands of Louisiana, Inc., 429 So.2d 459 (La.App. 4th Cir.1983). In that case, this Court held that a servitude had been established although the recorded plan of subdivision was merely marked “Reserved for Road.” The holding was based upon the fact that a road on the reserved land was actually built and used for many years. In contrast, in the case before us, the plat of subdivision effectively reserved a forty foot wide strip for a road, but a forty foot wide road was never built and used. Instead, immediately after the forty foot strip was reserved, a contractual servitude was explicitly granted and a twenty foot wide road was built and used.
Because neither the Declaration of Title Change nor the survey annexed to it contain language envincing an intent to create a servitude, we look only to the Act, captioned “Servitude of Passage” of February 28, 1973 by which New Orleans East, Inc. sold Lot M-2A and granted the servitude of passage across Lot M-1A to Village Plaza’s predecessor in title, Montglen. The Act states that New Orleans East
does hereby grant in favor of [Mont-glen,] its successors and assigns a nonexclusive servitude of passage for road access purposes, including the right of ingress and egress from Chef Menteur Highway to Lot M-2A, and for the placement of accessory lighting, including the placement of a sign thereon, all subject to the following terms and conditions.
1) The servitude granted hereby shall extend over and across that portion of the hereinabove described property which is shaded with cross hatched lines on the sketch attached hereto and made part hereof, and marked Exhibit A, which Exhibit A has been duly par- *785 aphed “Ne Varietur” by me, Notary, for identification herewith.
******
4) [Montglen] agrees that within 6 months from the date hereof it shall pave at its expense a strip approximately 20 feet over and across the servitude area extending from Chef Menteur Highway to Lot M-2A. Such paving shall be in accordance with paving plans and specifications shown on attached Exhibit A and subject to the approval of the Sewerage and Water Board of New Orleans....
This language clearly expresses the intention of New Orleans East, Inc. to grant a servitude to Montglen, and we hold that the servitude was created by the February 28, 1973 Act.
The present dispute regarding the width of the servitude of passage appears to have arisen primarily from an inconsistency in this Act. The inconsistency is the contradiction between the width of the servitude shown on the Gandolfo, Kuhn plan referred to in the Act and that shown on the sketch attached to the Act as Exhibit A.
The Gandolfo, Kuhn plan is not attached to the Act but is apparently the plan referred to in the prefatory portion of the Act which recites that New Orleans East “agreed and promised to grant ... a nonexclusive permanent servitude of passage over and across a portion of Lot M-1A as shown on said plan.” The Gandolfo, Kuhn plan shows the entire Sewerage & Water Board servitude which lies on Lot M-1A shaded in blue with the legend “denotes portion of 40' S. & W.B. Servitude required for Roadway Access Servitude for Lot M-2A.”
In contrast, Exhibit A is attached to the Act and is referenced in the operative portion of the Act which states that New Orleans East “does hereby grant” the servitude. Exhibit A shows the servitude of passage as “that portion of the hereinabove described property which is shaded with cross hatched lines....” An examination of Exhibit A clearly shows the cross hatched area is somewhat less than the entire width of the forty foot Sewerage & Water Board servitude.
The two maps thus show servitudes of differing widths. We do not find them in conflict, however, because they are referenced in different parts of the Act for different purposes. The Gandolfo, Kuhn plan, showing the forty foot Sewerage & Water Board servitude, is referred to in the preface to the Act and merely illustrates the written description of the property from which the servitude of passage is to be created. Exhibit A, on the other hand, is annexed to and paraphed by the notary for identification with a term of the grant of the servitude of passage — the portion of the Act which actually created the servitude. The respective positions and purposes within the Act of these references to the two maps indicates the parties’ intention that the servitude of passage they were creating would be that shown in Exhibit A. We, therefore, find that the servitude of passage was created as shown on Exhibit A as less than the width of the Sewerage & Water Board servitude. Hence, the Trial Judge erred in finding that Village Plaza’s servitude of passage was co-extensive with the Sewerage & Water Board servitude.
This conclusion is reinforced by several applicable principles of interpretation. The first principle is that a diagram or map attached to a deed controls the written description. Casso v. Ascension Realty, 195 La. 1, 196 So. 1 (1940). This principle, coupled with the rule of C.C. art. 1848 that parol evidence may not be admitted to vary the contents of an authentic act, requires that we discount the testimony of a Village Plaza witness who stated that the parties knew that the sketch was in error and that they considered it superfluous to the passage of the Act and that Montglen understood that it was getting the entire Sewerage & Water Board servitude. Hence, Exhibit A controls the written description in the Act, although, as we explained above, a careful reading of the Act does not communicate an ambiguous meaning. We also *786 recognize the principle that doubt as to the existence or extent of a predial servitude is to be resolved in favor of the servient estate. La.C.C. art. 730. Therefore, any ambiguity must be resolved in favor of the least restriction on defendants’ property, that is, in favor of the interpretation yielding the smaller servitude.
Having found that Village Plaza’s servitude of passage is not co-extensive with the forty foot wide Sewerage & Water Board servitude, we now must determine its exact width and location. Neither Exhibit A nor the Act’s written description of the servitude expressly states its width. Exhibit A contains no scale or notation of the width of the cross hatched area which indicates the servitude. Drawn beside the map diagram of the property, however, are two cross-section sketches of the roadway which Montglen was obliged to construct on the servitude, and we infer the width of the servitude from those sketches. They show a total width of twenty-eight feet to be occupied by the asphalt road and its right of way — a twenty foot paved road with a two foot shell shoulder on either side and a sand base extending for an additional two feet on either side. We therefore find that Village Plaza’s servitude of passage occupies a twenty-eight foot wide strip along the western edge of defendants’ property, and as clearly shown on Exhibit A, the western boundary of the servitude is the same as the western boundary of defendants’ property. This finding as to the width of the servitude is in accord with the testimony of the court-appointed surveyor, John Walker, and the location is in conformity with Walker’s survey as well as with that of defendants’ expert, Joseph M. Marques. George E. Koester, who surveyed the property and testified on behalf of Village Plaza, merely surveyed the property for existing physical features and did not give an opinion regarding the width or location of his client’s servitude.
We next must consider the issue raised by the reconventional demand of the placement of the asphalt roadway and Village Plaza’s lights and sign which, in their present location, cause vehicles entering the servitude road from Chef Menteur Highway to drive across the defendants’ parking lot. Defendants allege that the road was constructed outside the servitude, on property which they hold in full ownership, and that Village Plaza has constructed signs not authorized by the Act of servitude and that the signs, like the road, are misplaced. Our examination of the Act which established the servitude as compared with the three surveys and expert testimony presented at trial convinces us that the defendants’ allegations are correct.
It is readily apparent that the asphalt road was not constructed within the boundaries of the servitude as we have found it established. All three surveys show that the eastern edge of the roadway is more than twenty-eight feet from the western boundary of defendants’ property. Additionally, the Act of servitude provided that light standards could be placed upon the servitude, three feet off the right-of-way line, while the surveys show two light standards placed approximately seven and eleven feet from the western edge of the servitude. The Village Plaza sign authorized by the Act of servitude also appears to be misplaced. Exhibit A provides that the sign is to be located “no closer than five feet to the right-of-way line,” but the surveys show the base of the sign fourteen and a half feet from the western boundary of the servitude. Finally, the style and shape of the Village Plaza sign is governed by the Act of servitude which authorizes only one sign. The evidence, however, shows that the Village Plaza merchants have placed additional signs advertising their individual businesses.
The issues concerning these improvements placed upon the servitude by the dominant estate, like that of the width and location of the servitude, should be resolved by the provisions of the Act of servitude and its attached exhibits. When a servitude is established by a contract, as in this case, the terms of the contract regu *787 late the extent of the servitude. Red River v. Notes, 406 So.2d 294, 297 (La.App. 3rd Cir.1981). Had Village Plaza and its predecessor constructed the roadway and other improvements in conformity with the terms of the Act of servitude, the present dispute would not have arisen. We find that the placement of the asphalt road, the light standards and the Village Plaza sign violates the servitude agreement, and Village Plaza is obliged to correct these violations. We recognize, however, that strict adherence to the terms of the Act of servitude is impossible as to one provision because it is ambiguous. Exhibit A provides that the Village Plaza sign is to be placed no closer than five feet to the boundary of the servitude. Regardless of which side of the servitude the five feet is measured from, however, such a location would put the sign on the travel portion of the road, were the road correctly placed. Such a location was surely not the intention of the parties, and they are not obligated to comply with an ambiguous provision of the Act by which they are otherwise bound. Accordingly, Village Plaza is to remove its sign to a position which is within the servitude and on the shoulder of the road.
For the foregoing reasons, we order Village Plaza Partnership to remove all improvements not constructed within the boundaries of its servitude of passage, which is that strip of land twenty-eight feet wide along the western boundary of Lot M-1A, extending from the boundary of Lot M-2A to Chef Menteur Highway. In the placement of improvements upon the servitude, Village Plaza is bound by the Act of servitude, including Exhibits A and B, passed on February 28,1973 by which New Orleans East, Inc. granted the servitude to Montglen Enterprises, Inc. Having decided the issues regarding the servitude in the defendants’ favor, we find it unnecessary to consider the other issues which they raise, except that we affirm the Trial Court’s assessment of one-half of the Walker and Avery fee to each party. All costs of this appeal are also to be paid by the parties jointly.
REVERSED AND RENDERED.
VILLAGE PLAZA’S PLEA OF PRESCRIPTION
Village Plaza Partnership has filed along with its application for rehearing a “Plea of Prescription,” asserting that “it is plain on the face of the record” that it acquired the servitude it claims by reason of the prescription of ten years. This plea of acquisitive prescription was not raised in the Trial Court; the pleading now before us, filed after the rendition of this Court’s decision, raises the issue for the first time.
The filing of the plea at this stage of the proceedings is justified, Village Plaza contends, by interests of judicial economy which override the provisions of La.C. C.P. art. 2163 which permit an appellate court to consider a peremptory exception filed for the first time in that court, only if pleaded prior to submission of the case for a decision. Aside from the doubtful wisdofh of circumventing Article 2163 on the basis of policy considerations, Village Plaza’s argument in favor of its plea fails for another, more fundamental reason. Village Plaza’s Plea of Prescription is not a peremptory exception, contemplated by Article 2163; it is the assertion of a new cause of action. The plea is not an exception, defined by La.C.C.P. art. 921 as “a means of defense, other than a denial or avoidance of the demand, used by the defendant ... to retard, dismiss, or defeat the demand....” It is, instead, a theory by which Village Plaza, the plaintiff, seeks to prevail on its claim. Nothing in our procedural law permits the assertion of a new cause of action after an appellate court has rendered its decision on a case.
The plea filed by Village Plaza and its reliance upon the evidentiary record present the same procedural situation as that in Freeman Baptist Church v. Hillen, 345 So.2d 74 (La.App. 1st Cir.1977). In that case, the Court of Appeal rejected a plea of prescription filed for the first time in that court, stating
In this court Plaintiff urges title predicated upon acquisitive prescription of 10 and 30 years. However, the record es *788 tablishes that upon trial, Plaintiff relied exclusively upon his record title and did not plead either of said prescriptive periods. It also appears that Plaintiff offered evidence of his authors’ possession which was timely objected to on the ground that plaintiff had not pled title by acquisitive prescription, and to admit such evidence would enlarge the pleadings. The trial court admitted evidence of such possession solely in support of Plaintiff's record title. Plaintiff did not request leave to amend his pleadings to include a claim of title by acquisitive prescription but elected to rest his case upon proof of ownership by recorded title. Under the circumstances, we cannot consider the pleas of prescription initially made in this court.
345 So.2d at 77-78.
Accordingly, Village Plaza’s Plea of Prescription is denied.