CARTER, Judge.
This is a suit for damages arising out of an encroachment allegedly constructed by Billy Ray Pruitt and Betty Jo Spencer Pruitt on the property of Dr. Richard M. Hill and Barbara Stice Hill.
BACKGROUND
During mid-1982, the Pruitts began operating, as lessee, a Mobil Oil Corporation service station located at the intersection of Monterrey Boulevard and Greenwell Springs Road in Baton Rouge, Louisiana, under the trade name of Park Forest Mobil. On January 22,1986, the Pruitts obtained a right of first refusal to purchase the Mobil property. The Pruitts subsequently negotiated with Circle K General, Inc. to purchase approximately two-thirds of the property upon the Pruitts’ acquisition of title from Mobil. To finance the acquisition, sale, and construction of a commercial building on the property retained by the Pruitts, the Pruitts obtained a loan from Louisiana National Bank. In conjunction with these transactions, the Pruitts retained Simmons J. Barry, a civil engineer and land surveyor, to survey and resubdi-vide the property.
By special warranty deed, dated May 23, 1986, the Pruitts purchased from Mobil the following described property:
A TRACT OF LAND, together with all buildings and improvements located thereon and all rights, ways, privileges and servitudes thereto appertaining, being, a tract of land being a resubdivision of Lots A & B composed of a portion of Lots 5 & 6 of Allendale Farms, situated in Section 48, T6S, R1E, East Baton Rouge Parish, Louisiana and being more particularly described as follows:
Commence at the intersection of the eastern right-of-way of Monterrey Boulevard and the southern right-of-way of Greenwell Springs Road, said intersection being marked by a V2" I.P. set, and being the point of beginning; thence proceed along the southern right-of-way N 72° 29' 29" E — 210.26' to a 1" I.P. found and corner, thence proceed S 2° 5' 33" E — 168.31' to a 1" I.P. found and corner; thence proceed S 72° 17' 10" W — 210.50' to a Vz" I.P. and corner, said corner being on the eastern right-of-way of Monterrey; thence proceed along the eastern right-of-way of Monterrey N 2° 50' 33" W— 169.10 to a ½" I.P. set and the point of beginning said tract contains 0.79 acres.
Subject to any existing encroachments.
Thereafter, the Pruitts conveyed to Circle K General, Inc. the following described property:
A CERTAIN LOT OR PARCEL OF GROUND, together with all the buildings and improvements thereon, situated *728 in Section 48 of Township 6, south of Range 1, east of the St. Helena Meridian, in East Baton Rouge Parish, state of Louisiana, and more particularly described as LOT A-l-B according to “Map showing the Resubdivision of Lot A-l of the Original Lots 5 & 6, Allendale Farms into Lot A-l-A and Lot A-l-B for William and Betty Pruitt, by Simmons J. Barry & Associates, Consulting Engineers, which map is dated 5/6/86 and duly filed as Original 981, Bundle 9843 in the official records of the Recorder of East Baton Rouge Parish, Louisiana, having such dimensions and bearings as shown on said map.
The Barry map depicted the physical livided tracts as boundanes ot the two subd follows:
[[Image here]]
Lots A-l-A and A-l-B lie adjacent to a larger tract of land more commonly referred to as the Monterrey Village Shopping Center, which is owned by Dr. Richard M. Hill and Mrs. Barbara Stice Hill. The tract purchased by the Pruitts from Mobil is bounded on the north and west by the Monterrey Village Shopping Center.
During negotiations for the acquisition of the Mobil property, the Pruitts became aware of a possible encroachment by the Monterrey Village Shopping Center parking lot upon lot A-l-A. The Barry survey indicated that the shopping center parking lot encroached upon their property several feet. On or about September 16, 1986, the Pruitts began construction of an aluminum commercial building along the westernmost boundary of their property and included a portion of the parking lot.
On September 19, 1986, the Hills sent a field crew to survey the shopping center property and to determine whether the Pruitts’ construction encroached upon the Monterrey Village Shopping Center parking lot. On or about September 24, 1986, the Hills notified Barry, the civil engineer and land surveyor who performed the Pruitts’ survey, that the Pruitts’ construc *729 tion encroached eleven to twelve feet upon the Hill property. The Pruitts were likewise notified of the encroachment. Construction on the commercial building ceased shortly thereafter.
The Bankston survey depicts the extent of the encroachment as follows:
[[Image here]]
On March 16, 1987, the Pruitts filed a suit for damages for the erroneous survey against Simmons J. Barry, d/b/a Simmons J. Barry & Associates, and Barry’s professional liability insurer, CNA Insurance Company. The Pruitts subsequently amended their petition to name numerous additional defendants.[1] On November 3, 1987, the Hills filed an intervention petition against the Pruitts and several other parties, requesting removal of the structure encroaching upon their property or, alternatively, damages.
The various issues were bifurcated for trial. The instant matter proceeded to trial on the issue of LSA-C.C. art. 670 only. The parties stipulated that LSA-C.C. art. 670 was applicable to the instant case, and the only dispute concerned the applicable remedy. The trial court determined that *730 the Pruitts were entitled to a judicial predial servitude under LSA-C.C. art. 670. From this adverse judgment, the Hills appeal.
ARTICLE 670 SERVITUDE
LSA-Const. art. 1, Sec. 4 provides, in pertinent part, as follows:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
LSA-C.C. art. 477 provides as follows:
Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law.
Louisiana law addressing predial servi-tudes incorporates the civilian principle that any doubt as to the free use of immovable property must be resolved in favorem libertatis. See LSA-C.C. art. 730, comment (b); Domat, Les lois civiles dans leur ordre naturel, 1 Oeuvres de Domat 329 (ed. Remy 1828); 2 Toullier, Droit civil francais 192 (1833). The Louisiana courts have consistently held that servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law. Buras Ice Factory v. Department of Highways, 235 La. 158, 103 So.2d 74 (1957); Parish v. Municipality No. 2, 8 La.Ann. 145 (1853); Village Plaza Partnership v. Brandt, 501 So.2d 781 (La.App. 4th Cir.1986); Robert Investment Co., Inc. v. Eastbank, Inc., 496 So.2d 465 (La.App. 1st Cir.1986); Camellia Place Subdivision—Block 1 Association v. Willet, 491 So.2d 764 (La.App. 3rd Cir. 1986), writ denied, 496 So.2d 349 (La.1986). Additionally, any doubt as to the interpretation of a servitude encumbering property must be resolved in favor of the property owner. McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960).
Prior to the revision of the Civil Code articles on predial servitudes in 1977, the Civil Code provided no express remedy for the situation where a landowner in good faith constructed a building or other structure of a permanent nature which encroached upon adjoining property. Recognizing the sometimes harsh and inequitable result of requiring a landowner in good faith to demolish or remove a structure in such a situation, the courts on occasion turned to LSA-C.C. art. 21 in seeking an equitable solution to the problem. Thompson v. Hemphill, 438 So.2d 1124 (La.App. 2nd Cir.1983). See Porterfield v. Spurgeon, 379 So.2d 56 (La.App. 3rd Cir.1979), writ denied, 381 So.2d 1235 (La.1980); Morehead v. Smith, 225 So.2d 729 (La.App. 2nd Cir.1969).
LSA-C.C. art. 670, as enacted by Acts 1977, No. 514, § 1, effective January 1, 1978, provides as follows:
When a landowner constructs in good faith a building that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed the court may allow the building to remain. The owner of the building acquires a predial servitude on the land occupied by the building upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered.
In adopting LSA-C.C. art. 670, the legislature’s intent was to ameliorate the often harsh results reached under prior law when a landowner, in good faith, constructed a building that encroached on an adjacent estate. The article provides that when a landowner in good faith constructs a building that encroaches on a neighboring estate, and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or complains only after the structure is substantially completed, the court may allow the building to remain, awarding a predial servitude to the good faith encroacher upon the latter's paying compensation and any damages suffered by the neighbor. Antis v. Miller, 524 *731 So.2d 71 (La.App. 3rd Cir.1988), writ denied, 531 So.2d 271 (La.1988).
Clearly, LSA-C.C. art. 670 attempts to protect a good faith landowner, whose building encroaches upon the land of another, when the owner of the adjacent estate fails to take action to prevent the encroachment within a reasonable time of learning of the encroachment. The language of LSA-C.C. art. 670 makes an award of a predial servitude discretionary with the trial court once the requisite elements have been satisfied. Antis v. Miller, supra.
In the instant case, the trial court, after reviewing all of the evidence and deposition testimony, determined that the Pruitts were entitled to a predial servitude upon payment of compensation for the value of the servitude and for any other damage suffered by the Hills.[2] In his written reasons for judgment, the trial judge stated, in pertinent part:
The Pruitts obtained a survey prior to construction. The survey was incorrect which resulted in a twelve foot encroachment upon the parking lot of the neighboring Hill property. After construction began on September 15, 1986, the Hills obtained confirmation of their survey and Simmons J. Barry’s office notified the Pruitts of the encroachment on or about September 24, 1986. James Dodds, the expert witness for the Hills, testified that the building was 48.6% complete on or about September 24, 1986. The contractor for the Pruitts, Henry Duncan, testified that the building was 70% complete.
The Court finds that the Pruitts were in good faith when they began construction of their building in reliance on a survey. The Court further finds that the Hills did complain within a reasonable time after they knew of the encroachment. The remaining question is whether the building was substantially complete. LSA-C.C. Article 670 was enacted "... to ameliorate the often harsh results reached under prior law when a landowner, in good faith, constructed a building that encroached on an adjacent estate.” Artis (sic) vs. Miller, 524 S.2d 71 (3rd Cir., 1988) at pg. 76. The Court feels that it would be a harsh remedy to require the destruction of a building which is even 48% complete when it only encroaches on a parking lot.- Destruction of the building is in the nature of an injunction. Injunctions are not available when there is an adequate remedy in damages. The amendment to LSA-C.C. Article 670 simply affirms this time honored rule.
We find that the grant of a servitude under the particular facts and circumstances present in this case constitutes a clear abuse of discretion. While the Pruitts may have established that they were in good faith prior to commencement of construction,[3] they failed to establish that the Hills failed to complain within a reasonable time after they knew or should have known of the encroachment or complained only after substantial completion of the commercial building.
The record reveals that the Hills complained of the encroachment upon their property within nine days of the commencement of construction of the Pruitts’ commercial building. The Hills, upon learning of the possible encroachment, acted prudently, contracting with a surveyor to resurvey the shopping center boundary and confirm or dispel their suspicions of an encroachment. The survey revealed that some 25% of the Pruitts’ new construction encroached upon the Hills’ property approximately eleven to twelve feet.
*732 Additionally, the structure constructed by the Pruitts was an aluminum building which could be begun and completed within a short period of time. The building, by its nature, was akin to a prefabricated structure. The expert testimony revealed that the commercial building was between 48% and 70% complete only nine days after construction began.
A thorough review of the entire record in this case reveals that the Hills timely complained about the encroachment of the Pruitts’ building. The fact that the building could be substantially constructed, if not completely constructed, within a short period of time does not diminish the prudent and timely objection by the Hills. As such, the trial judge erred in granting the Pruitts a servitude under LSA-C.C. art. 670.
CONCLUSION
For the above reasons, the judgment of the trial court granting the Pruitts a judicial servitude is reversed, and judgment is rendered herein ordering removal of the Pruitts’ building. Costs are assessed against the Pruitts.
REVERSED AND RENDERED.
LeBLANC, J., dissents and assigns reasons.
SAVOIE, J., dissents, finding no error on the part of the trial court.

. Numerous other actions were filed by the parties, none of which is pertinent to the issues involved in the instant appeal.

. In subsequent proceedings, the Hills were awarded $7,140.00 as compensation for the value of the predial servitude previously awarded. Additionally, the Pruitts were awarded $330,-000.00 in damages against numerous parties as a result of the erroneous survey.

. We specifically do not address the Pruitts’ good faith. The Pruitts were aware of a potential problem with the boundary between their property and the Hills’ shopping center prior to construction and failed to make further inquiry. Whether the Pruitts were entitled to rely on the Barry survey, without further investigation, in light of an obvious encroachment by one estate upon the other, is specifically not addressed.