29 So.2d 858

**JAMES v. DELERY.**

No. 38237.

March 17, 1947.

Robert E. Baird, of New Orleans, for appellant.

Melvin P. Barre and Rene R. Nicaud, both of New Orleans, for appellee.

O'NIELL, Chief Justice.

This is an appeal from an order granting a preliminary injunction, forbidding the defendant to padlock a gate across a common road in the Hope-Plantation Subdivision in the Parish of St. John the Baptist.

The plaintiff and the defendant own adjoining small farms in the subdivision, near the village of Garyville. The plaintiff's land lies to the west and north of the defendant's land. The direct route from the plaintiff's land to the public road leading to Garyville lies across defendant's land.

The lands owned by the plaintiff and the defendant, respectively, belonged at one time to Augustin Lasseigne, and formed part of what was known as the Hope Plantation. In 1917, Lasseigne divided the plantation into small farms and had a survey and plat made of the land and filed the plat in the Conveyance Office of the Parish of St. John the Baptist. In a legend on the map or plat certain common rights were expressly reserved for the benefit of the owners of lots in the subdivision,—thus:

"The Following Rights are Reserved:

1. *A servitude is reserved in favor of all lots and other lands of Hope Pltn. over Common Roads,*

2. A servitude of drainage in favor of all lots and said other lands, through existing ditches and canals, across all lots and said other lands, which ditches and canals shall remain open. The right is also reserved to any owner or owners to enter at will upon any lots or other lands of Hope Pl., without let or hindrance, for the purpose of cleaning or plugging out said ditches and canals,

3. The Right of Way of the Sugar House switch track and other R. R. spurs, is reserved as long as said tracks shall remain, in whole or in part." (Italics added.)

The plat having been deposited in the recorder's office, Lasseigne then sold lots in the subdivision in accordance and with reference to the plat. In the acts of sale of both the plaintiff's and defendant's properties, express reference was made to this plat. For example, in the defendant's acquisition from Lasseigne of Lot 5 in the subdivision, in 1918, the description of the property reads as follows:

"A Certain Lot of Ground, situated in the Parish of St. John the Baptist, on the left bank of the Mississippi River, forming part of [or] a portion of Hope Plantation

divided into lots *as per plan of survey made by Daney & Waddill, Civil Engineer and Surveyors in the City of New Orleans, dated November 15th, 1917, which said plan is on file and of record in the office of the Clerk of Court and Recorder of the Parish of St. John the Baptist which said lot of ground is designated on said plan as:"* \* \* \* (Italics added.)

For approximately 28 years, i. e., from the establishment of the subdivision in 1917 until August of 1945, the plaintiff availed himself of a dirt road, which runs between lots 5 and 11 as shown on the plat, and which is labelled "Common Road" on the plat, in order to reach the public road which leads to Garyville.

The defendant, who owns lots 5 and 11, had fenced his property, and had placed a gate in the fence across the road running between the two lots. The gate remained unlocked until August of 1945, at which time the defendant placed a padlock on it.

The defendant gave as his reason for locking the gate that cattle and horses which are permitted to run at large in the neighborhood had been entering through the gate and were destroying his crops, and that his own livestock would stray through the open gate.

The facts of the case were virtually admitted by the litigants. The only controversy is the question of law, whether there was an establishment of a servitude of passage between lots 5 and 11 such as should prevent the defendant from obstructing the road or passage by locking the gate across the road.

The principle is well established in our jurisprudence that when the owner of a tract of land subdivides it into lots, designates on the map or survey of the subdivision streets or roads, and then sells the property or any portion of it with reference to such map, he thereby creates by title a servitude of passage over the streets or roads as shown on the map. McDonogh v. Calloway, La. 1844, 8 Rob. 92; Sheen v. Stothart, 1877, 29 La.Ann. 630; Iseringhausen v. Larcade, 1920, 147 La. 515, 85 So. 224; Larcade v. Iseringhausen, 1923, 153 La. 976, 96 So. 830; Richard v. City of New Orleans, 1940, 195 La. 898, 197 So. 594; Faunce v. City of New Orleans, La. App., 1933, 148 So. 57; Esposito v. Gaudet, La.App., 1942, 8 So.2d 783.

In an article in 12 Tulane Law Review 226, 238, the rule is stated as follows: "Of course, a strip of ground may be dedicated to use as a street, without any particular form being necessary. The positive intent of the owner, plus the actual use by the public for the purposes intended, must be shown. Intention may be shown by deed, words or act. The mere sale of lots with reference to a plot with streets and roadways constitutes a dedication, and formal acceptance by the public is not required."

There appears to be some contradiction in the cases cited as to whether the action of a landowner in subdividing his land and selling lots in accordance with a

plat amounts to a dedication in favor of the general public, or merely in favor of the vendees of the land in the subdivision. Sheen v. Stothart, supra; Larcade v. Iseringhausen, supra; Richards v. City of New Orleans, supra; cf. Act No. 134 of 1896. But, as the plaintiff in this case is an owner of lots in the subdivision, we do not find it necessary to pass upon that question. It is sufficient to say that the plaintiff, as owner of land bought in accordance with the plat on which certain "Common Roads" are shown, is entitled to the free and unobstructed use of these "Common Roads."

The defendant quotes from two cases in support of his contention that the plaintiff is not entitled to the use of the road in question here. Both of these cases are clearly distinguishable from the case before us. In the first of the cases cited, City of Alexandria v. Thigpen, 1907, 120 La. 293, 45 So. 253, 258, the owner of the land had prepared a map of a proposed subdivision. But the subsequent sale of the land was not made by lots or squares, but was a sale of the entire tract to one purchaser. The court held that the sale of the land as a whole, instead of by parts, evidenced an abandonment of the intent of the vendor to create the subdivision and establish a servitude thereon.

In the second case relied upon by the defendant, Quirk v. Miller, 1912, 129 La. 1071, 57 So. 521, the plaintiff sought an injunction to compel the defendant to remove certain obstructions from an alleged street, in a locality which was uninhabited except for the plaintiff and the defendant. The court denied the plaintiff's demand for the reason that even if the existence of the street should be conceded the plaintiff was as much at fault for having obstructed other so-called "streets" in the area as the defendant was for obstructing the "street" in controversy.

The defendant contends further that the plat in the instant case was never properly recorded, but was merely deposited with the recorder of conveyances, who failed to make an inscription on it. The evidence shows that it was the custom of the clerk of court, ex-officio recorder, to keep all maps or plats in a special drawer or tray in his office, where they were available for examination by any one requesting to see them. It is shown also by the testimony of the clerk of court that this plat has been kept in the same drawer or tray from the time when it was deposited there, in 1917.

Our opinion is that inasmuch as the defendant bought his lands in the subdivision by deeds which made express reference to the plat, and in which it was stated that the plat was "on file and of record in the office of the Clerk of Court and Recorder of the Parish", the defendant cannot be heard now to say that the reservation of the servitudes made on the plat is not binding upon him.

The judgment appealed from is affirmed at the cost of the appellant.