429 So.2d 459 (1983)
Frances Rotolo, Wife of/and Thomas B. BECNEL, and Gwendlyn Verdun, Wife of/and Benjamin X. Becnel
v.
CITRUS LANDS OF LOUISIANA, INC.
No. 12577.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1983.
Rehearing Denied April 27, 1983.
C. Ellis Henican, Joseph V. Bologna, New Orleans, for plaintiffs-appellees.
Martin A. Welp, Donald S. Martin, New Orleans, for defendant-appellant.
Before KLEES, BARRY and LOBRANO, JJ.
KLEES, Judge.

FACTS
On February 15, 1980, the plaintiffs purchased a tract of approximately 50.1 acres *460 of land in the St. Rosalie Subdivision in Plaquemines Parish, Louisiana. Included in the purchase were four parcels fronting on Louisiana Highway 23, more fully described as plots 103, 104, 105 and 106. The parcels were bounded on the remaining sides by the property of Citrus Lands of Louisiana, Inc.
The plaintiffs purchased the plots from the heirs of Mrs. Garney M. Chapuy, the widow of Leo G. Blackburn. The acquisitions of the plot of land are more easily understood when shown in the form of a chart.

 PLOT 103 PLOT 104
Acquired by Leo G. Blackburn Leo F. Blackburn from La.
from Louisiana Citrus Citrus Lands, Inc. (Not the
Lands, Inc. (Not the defendant) defendant) on June 30, 1933.
on October 19, 1931.
La. Citrus Lands, Inc., from La. Citrus Lands, Inc., from
Southern States Realty on So. States Realty on December
December 27, 1930. 27, 1930.
So. States Realty from Celeste So. States Realty from Celeste
Sugar Co. on June 16, 1927. Sugar Co. on June 16, 1927.
 PLOT 105 PLOT 106
Leo F. Blackburn from Thomas Leo F. Blackburn from Thomas
C. Thomas on May 7, 1943. C. Thomas on June 3, 1945.
Thomas C. Thomas from So. Thomas C. Thomas from La.
States on September 15, 1930. Citrus Lands, Inc. (Not the
 defendant) on May 18, 1937.
So. States Realty from Celeste La. Citrus Lands, Inc. from
Sugar Co. on June 16, 1927. So. States Realty on December
 27, 1930.
 So. States Realty from Celeste
 Sugar Co. on June 16, 1927.

On February 10, 1928, a plan depicting the St. Rosalie Plantation Subdivision was drafted by James S. Webb, Civil Engineer. However, this plan was not recorded in the Clerk's Office of Plaquemines Parish until August 17, 1931, in C.O.B. 71, folio 687. Thus at the time the plan was drafted by Mr. Webb, Southern States Realty Company was the sole owner of the four plots of land, but at the time the plan was recorded Louisiana Citrus Lands, Inc. (not the defendant) owned plots 103, 104 and 106 and Thomas C. Thomas owned plot 105.
According to the Webb plan of February 10, 1928, there is shown "40' Reserved for Road" running along side plot 103 and a servitude of 40 feet for drainage running through plots 103, 104, 105 and 106, owned by the plaintiffs, and through other plots in the St. Rosalie Plantation Subdivision, the Alliance Plantation Subdivision and La Reusitt Plantation Subdivision.
Soon after the plaintiffs purchased the four plots of land, the defendant caused the road on the northern side of plot 103 to be fenced in, preventing the plaintiffs from using the road. Plaintiffs further observed that the servitude of drainage on their property had been blocked by the appellants' placement of what they felt was an inadequate and improperly placed culvert under the road to the north of Plot 103.
The plaintiffs then filed suit seeking a temporary restraining order and a preliminary and permanent injunction to compel the defendant to stop obstructing the road to the north of Plot 103 and to stop obstructing the natural flow of the water from the plaintiffs' property.
The theory of the plaintiffs was that there was a formal or informal dedication of the roadway and the drainage servitude for public use in accordance with the subdivision plan of Mr. James Webb.
In addition the plaintiffs claimed that they possessed a natural servitude of drainage based upon our Civil Code.
The defendants argued that there was no formal dedication of the roadway, and that if there was an implied dedication, or a servitude, then that right had expired through non-use for a period of more than ten years. They also argued that they did not obstruct the drainage from the plaintiff's property.
The trial court without reasons granted an injunction against the closing of the road to the north of Plot 103 and ordered the removal of the fence erected by the defendant. However, he denied the request of the plaintiffs insofar as it related to the obstruction of drainage.
The issues faced by this Court are:
(1) Was there a formal dedication of the road in question?
*461 (2) If not, was there an informal dedication of the roadway and, if so, did the servitude granted by the informal dedication prescribe due to non-use?
(3) Does there exist a servitude of drainage from the property of the plaintiffs and; if so, was that servitude of drainage obstructed?

DEDICATION OF ROAD
The dedication of a road may be either a formal dedication, in compliance with the prevailing statute, or an implied dedication, which does not require compliance with the statute. Arkansas-Louisiana Gas Company v. Parker Oil Company, Inc., 190 La. 957, 183 So. 229 (1938). If a road is formally dedicated, then its ownership is vested in the public. But when there is an implied dedication, only a servitude in favor of the public exists. Conrad v. Reine, 240 So.2d 915 (La.App. 4th Cir.1970).
In the trial court, the plaintiffs contended that there was a formal dedication of the road. In order to support this contention, the plaintiffs called a Mr. Hugh McCurdy as a witness and qualified him as an expert surveyor. He reviewed the land survey of James S. Webb which was dated February 10, 1928. The plaintiff argues that the recordation of that 1928 survey on August 17, 1931, constituted a formal dedication of the road.
The applicable statutory law which prescribed the method of making dedication of land for public use was Act 134 of 1896 (now La.R.S. 33:5051). In pertinent part, it stated:
"Section 1. Be it enacted by the General Assembly of the State of Louisiana; That whenever the owner or owners of any real estate situated in this State shall desire to lay off the same into squares or lots with streets or alleys between such squares or lots and with the intention of selling or offering for sale any of said squares or lots it shall be be the duty of such owner or owners of such real estate before selling any square or lot or any portion of same, to cause to be made and filed in the office of the Keeper of Notarial Records of the parish wherein such property is situated and copied into the Conveyance Record book of such parish, a correct map of the real estate so divided, which said map shall contain the following:
1. The section township and range in which such real estate lies or subdivision thereof according to government survey.
2. The number of squares by numerals from 1 up, and the dimensions of each square in feet and inches.
3. The number of each lot or subdivision of a square and its dimensions in feet and inches.
4. The name of each street and alley its length and width in feet and inches.
5. The name or number of each square or plat dedicated to public use.
6. A certificate of the Parish Surveyor of the parish wherein the property is situated in the correctness of the map.
7. A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use."
The record clearly reveals that the requirements of the statute were not met. However, our Supreme Court has held that in order to effect a statutory dedication, complete and detailed compliance with the statute is not required. Garrett v. Pioneer Production Corporation, 390 So.2d 851 (La. 1980). But the Webb survey conforms to only one of the seven statutory requirements. It meets the requirement of § 1(3).
It should be noted that the statute requires recordation of the plot or map by the owners. And this court has held that if the owner of land at the time the map was designed was not the owner when the plan was recorded, then a subsequent recordation is ineffective. Conrad v. Reine, supra. Southern States Realty Co., the owner of the land when the plan was drafted, was not the owner when the plan was recorded. Therefore, under the rationale of Conrad, supra, no statutory dedication was possible in this situation.
*462 Our Supreme Court has qualified the holding of Conrad v. Reine, supra. In Garrett v. Pioneer Corporation, supra, it held that if a sale of land occurs prior to recordation of the plan or map, a statutory dedication may still be proven by the conduct of the parties in interest.
To effect a statutory dedication of a street, road or public place where full ownership rests in the municipality, parish or state, it would appear that plaintiffs must prove that the subdivider irrevocably dedicated the street, road or public place to public use. The term "40' Reserved for Road", in our minds, does not establish such intent. Thus we conclude that there was no statutory dedication.
The next question is whether there was an implied dedication. In James v. Delery, 211 La. 306, 29 So.2d 858, 859 (1947), the Supreme Court recognized what was necessary to establish such a servitude.
"The principle is well established in our jurisprudence that when the owner of a tract of land subdivides it into lots, designates on the map or survey of the subdivision streets or roads, and then sells the property or any portion of it with reference to such map, he thereby creates by title a servitude of passage over the streets or roads as shown on the map."
As previously shown, the road in question was merely marked "reserved for road" on the Webb plan. However, the record shows that this road was actually built and used by Mr. and Mrs. Blackburn and their servants on their behalf through the years that plot 103 was owned by the Blackburns. Also, John Ranata testified that from 1939 to 1949 his father used the road twice a week during the winter hunting season and that he used the road "almost every day". Thus, it appears that a servitude of passage over the road was actually established despite the fact that the area was marked "reserved for road".
Since there was an implied dedication, a servitude in favor of the plaintiffs existed. Therefore, if the servitude has not been extinguished by non use for ten years, then the plaintiffs have a right to traverse the road. Civ.Code art. 789 (1870).
The record indicates that as late as 1972, a Mr. Frank Smith used the road. Thus the servitude of passage over the road has not prescribed and the plaintiffs are entitled to use of the roadway.
Accordingly, we find no error in the trial court's determination of a servitude in favor of plaintiffs herein and his granting of the injunction.

SERVITUDE OF DRAINAGE
The plaintiffs answered the appeal and seek an injunction ordering the defendant to unblock the 40' drainage servitude on their land, so that the water on the plaintiffs' lands will naturally flow to the north and south.
The plan of James Webb makes reference to a "servitude ditch 40' wide." This servitude starts at the boundary of Lot 1 of the Alliance Plantation Subdivision and extends to the boundary between lots 107 and 108 of the St. Rosalie Plantation where there is now a primary canal.
The plaintiffs contend that the defendants blocked the servitude at the southern boundary of Plot 106 and placed an inadequate culvert at the northern boundary of Plot 103, all of which obstruct the use of the servitude for drainage purposes.
The record reveals that the alleged "blockage" of the servitude actually occurred in 1975 or 1976. The following articles of our civil code were in effect at that time:
"Art. 646. Real servitudes, which are also called predial or landed servitudes, are those which the owner of an estate enjoys on a neighboring estate for the benefit of his own estate.
They are called predial or landed servitudes, because, being established for the benefit of an estate, they are rather due to the estate than to the owner personally.
This kind of servitude forms the subject of the present title.

*463 Art. 647. A real or predial servitude is a charge laid on an estate for the use and utility of another estate belonging to another owner.
Art. 655. One of the characteristics of a servitude is, that it does not oblige the owner of the estate subject to it to do anything, but to abstain from doing a particular thing, or to permit a certain thing to be done on his estate.
Art. 660. It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
The proprieter above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome.
The testimony of the plaintiffs and their witnesses is to the effect that the southern flow of the drainage was blocked and the northern flow impeded by an inadequate culvert placed by the defendant on the northern side of Plot 103. The defendant, through a number of its employees, claims that it redesigned the drainage system in 1975 because it was then inadequate. The trial judge was obviously faced with a credibility decision since the testimony of the witnesses at trial was in direct conflict.
He chose to rule in favor of the defendants and we can find no manifest error in his ruling, particularly as the plaintiffs produced no evidence of the drainage problem or the actual direction of the natural flow of the water other than their own observations.
Accordingly, for the foregoing reasons the judgment appealed from is hereby affirmed.
AFFIRMED.