Judge Paula A. Brown
This case involves a public servitude. Appellant, Deep South Leasing, LLC ("Deep South"),[1] seeks review of the district *374 court's June 14, 2017 judgment which found a general public servitude existed in favor of Appellee, River Rental Realty, LLC, and River Rental Tools, Inc. (collectively "River Rental").[2]
For reasons discussed below, we affirm the district court's judgment.
FACTUAL AND PROCEDURAL HISTORY
River Rental and Deep South operate businesses on property in the Burmaster Land and Development Co., Inc. Industrial Park ("Industrial Park") in Belle Chasse, Louisiana.
River Rental's property is surrounded by three streets: Derrick Road, Commerce Street, and a street referred to as the Unnamed Roadway (or Oilfield Road). These three streets form a "U" shape, with Derrick Road and Commerce Street running perpendicular to each other, and the Unnamed Roadway connecting the northern ends of the two. Derrick Road and Commerce Street both exit onto Engineers Road.
In January 2014, Deep South purchased from Burmaster Land and Development Company, L.L.C. ("Burmaster") a tract of property in the Industrial Park. The description of the property was set forth in the Cash Sale of Property, which included a provision that the property was subject to a servitude in favor of the public for Derrick Road and a servitude for ingress and egress for Commerce Street, and Unnamed Roadway "as shown on survey by Hugh McCurdy, III, PLS dated June 18, 2013."[3]
In August 2014, Deep South began blocking access to Commerce Street and the Unnamed Roadway by constructing gates on these roadways. As a result, River Rental filed in the district court a "Petition to Be Maintained in Possession and for Injunctive Relief" (the "Petition"). In the Petition, River Rental alleged that: (1) it had a right of servitude of ingress and egress over the roadways known as Commerce Street and the Unnamed Roadway; (2) the general public and ancestors in title had used the Unnamed Roadway and Commerce Street for a period in excess of thirty years as a servitude for ingress and egress; and (3) the previous owners of Unnamed Roadway and Commerce Street had implicitly dedicated the roads for public use. River Rental prayed that a temporary restraining order be issued enjoining Deep South from interfering with River Rental's enjoyment of the servitude and requiring Deep South to open or remove the gates it had constructed on the Unnamed Roadway and Commerce Street. Additionally, River Rental prayed that the court grant its application for a preliminary injunction and a permanent injunction consistent with the preliminary injunction.
Deep South filed an answer and a reconventional demand praying that the Petition be dismissed.
The district court issued an order granting a temporary restraining order against Deep South, enjoining it from interfering with River Rental's use of the servitude along Commerce Street and the Unnamed Roadway pending a show cause hearing on River Rental's application for a preliminary injunction.
*375 Following the issuance of the temporary restraining order, the parties entered into a consent judgment wherein they agreed that a preliminary injunction would issue against Deep South, enjoining it from interfering with River Rental's use and enjoyment of the Unnamed Roadway and Commerce Street for ingress and egress pending a trial on River Rental's Petition.
A bench trial on the permanent injunction was held on March 23 and 24, 2017. At the beginning of trial, Deep South filed a "Motion in Limine and Motion to Strike Certain Claims of the Plaintiffs." The district court deferred ruling on the motion until the conclusion of the trial.
At trial, one of the main witnesses called by River Rental was Hugh McCurdy III ("Mr. McCurdy"). He was accepted by the district court as an expert, a professional land surveyor, and as the custodian of records for his father, Hugh McCurdy, Jr., also a professional land surveyor.
Mr. McCurdy testified the February 28, 1968 survey subdivided the tract into numbered lots and showed the dimensions of each lot; and monuments were set at the corners of every lot. The survey contained the Section, Township and Range where the property was located. The proposed streets, with the lengths and widths of the streets, were indicated on the survey. Additionally, Mr. McCurdy testified that the survey showed 50' wide streets, which was a typical size for Plaquemines Parish. Mr. McCurdy indicated the 1968 survey was signed by Hugh McCurdy, Jr., as a licensed civil engineer.
Mr. McCurdy testified that the March 24, 1971 survey showed a subdivision of property into numbered lots and the dimensions of each lot; and monuments were set at the corners of every lot. The survey contained the Section, Township and Range where the property was located and showed proposed streets with the lengths and widths of the streets. Mr. McCurdy noted that Lots IB-IK, and Lots 2B-2H as shown on this survey do not have access to Engineers Road except by these proposed streets. Mr. McCurdy indicated the 1971 survey was signed by a licensed land surveyor and civil engineer.
Mr. McCurdy testified the May 21, 1973 survey, which was a re-subdivision plat for Burmaster, showed a layout of subdivided numbered lots with dimensions; and monuments were set at the corners of every lot. The survey also contained the Section, Township and Range where the property was located, and it was signed by a licensed surveyor. The survey showed streets with 50' width. Mr. McCurdy stated that one of the streets, Derrick Road, shown in the 1973 survey was formally dedicated to the public by Burmaster and accepted by Plaquemines Parish in June 1973.
Mr. McCurdy testified he prepared the survey dated June 30, 2010. On the survey, the streets described in the previous surveys were marked Derrick Road, Commerce Street, and Unnamed Roadway. Mr. McCurdy stated that this survey was referred to in the property description contained in the Act of Sale between Burmaster and Deep South.
Mr. McCurdy testified the June 18, 2013 survey that he prepared showed a re-subdivision of property into numbered lots and showed the dimensions of the lots; and each lot had monuments at the corners. He explained that the survey showed 50' wide streets. These streets were designated in the survey as Derrick Road, Commerce Street, and Unnamed Roadway. Moreover, the survey contained the Section, Township and Range where the property was located. This survey was signed by a licensed surveyor. Mr. McCurdy testified that this survey showed both gross *376 acreage and net acreage contained in the property being subdivided. The gross acreage took into account all of the property being surveyed. The net acreage showed what was left after Mr. McCurdy took out the property encumbered by the servitudes on Commerce Street, the Unnamed Roadway, and Derrick Road. Mr. McCurdy acknowledged this re-subdivision plan was approved by the Plaquemines Parish Council and filed in the conveyance records, as well as all the surveys he testified about were recorded, in some manner, in the conveyance records of Plaquemines Parish.
Mr. McCurdy indicated that, in his experience as a licensed land surveyor, when a landowner creates subdivision plans showing proposed streets, existing elevations and surface drainage, and showing paving and sub-surface drainage, it shows an intention on the part of the of the owner of the property to create a subdivision with streets.
Several witnesses, mainly business owners in the Industrial Park, testified on behalf of River Rental. Andre Amedee, president of River Rental Tools, and Maria Amedee, vice president of River Rental Tools, testified they had conducted business in the Derrick Road area since 1985. Both testified they used Commerce Street and Unnamed Roadway, they saw the public use these roadways, and they thought the roadways were public. Dennis Burmaster testified his father was one of the owners of Burmaster. He testified he helped construct Commerce Street and Unnamed Roadway in the mid-1960s and that the public had continuously used them.
Gavin Quartana testified his family owned a business on Derrick Road, and his father began developing the property for the business around 1976. He stated he and his employees used Commerce Street and Unnamed Roadway, and he thought these roads were public streets. Arvel H. Gurganus, Jr., testified his family owned a business on Derrick Road since 1985. He recalled he used Commerce Street and Unnamed Roadway, he saw other vehicles use these roads, and he thought they were public roads. Jonathon Choate testified he owned a business on the corner of Engineers Road and Commerce Street since 2007. He stated he used Commerce Street and Unnamed Roadway, he saw other vehicles use these roads, and he thought the roads were public streets. Gary Veron testified he drove his eighteen-wheeler truck on Commerce Street and Unnamed Roadway for eighteen to twenty years, and he thought they were public streets.
On behalf of Deep South, Douglas LaNasa, Jr., Chief Executive Officer of Deep South Leasing, LLC, testified. He stated Deep South began purchasing portions of Burmaster's property in 2010. He explained the purpose of the construction of the gates on Commerce Street and Unnamed Roadway was to provide security for the equipment stored on Deep South's property.
After taking the matter under advisement, a judgment was rendered on June 14, 2017, and the district court provided reasons for the judgment. The judgment provided in pertinent part:
• Denied Deep South's motion in limine ;
• Ordered Deep South, its agents, employees and/or representatives to recognize the existence of a servitude in favor of the general public along Commerce Street and the Unnamed Roadway (Oilfield Road);
• Entered a permanent injunction against Deep South and in favor of the River Rental, enjoining Deep South, its agents, employees and/or representatives from interfering with River Rentals'
*377 or the general public's use of and enjoyment of Commerce Street and the Unnamed Roadway (Oil Field Road);
• Ordered Deep South, its agents, employees and/or representatives to permanently open and/or remove the gates which it placed across the Unnamed Roadway and Commerce Street; and
• Dismissed the Reconventional Demand of Deep South.
Following, Deep South filed a motion for new trial which was denied. This appeal followed.
STANDARD OF REVIEW
Appellate review of the issues-servitude, injunction, and motion in limine -have separate standards of review.
The standard of appellate review for judgments regarding servitudes was set forth by this Court in 1026 Conti Condominiums, LLC v. 1025 Bienville, LLC , 15-0301, pp. 4-5 (La. App. 4 Cir. 12/23/15), 183 So.3d 724, 727 :
Judgments regarding servitudes are reviewed under the manifest error standard of review. Allen v. Cotton [Cotten] , 11-1354, p. 3 (La. App. 3 Cir. 5/2/12), 93 So.3d 681, 683 [citations omitted]. An appellate court may not set aside a trial court's findings of fact unless they are manifestly erroneous or clearly wrong. Id. (citing Rosell v. ESCO , 549 So.2d 840 (La.1989) ). To reverse under the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the trial court's finding and that the record shows the finding to be manifestly erroneous. Id. (citing Stobart v. State, Dep't of Transp. and Dev. , 617 So.2d 880 (La.1993) ).
* * *
However, legal errors are reviewed under the de novo standard of review. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. P'ship , 01-2812, p. 6 (La. App. 1 Cir. 12/30/02), 839 So.2d 82, 89-90, writ denied , 03-0306 (La. 4/4/03), 840 So.2d 1219. "Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." Id. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Id. , 01-2812, p. 6, 839 So.2d at 90 (citing Evans v. Lungrin , 97-0541, 97-0577 (La. 2/6/98), 708 So.2d 731 ; Turner v. Ostrowe , 01-1935 (La. App. 1st Cir. 9/27/02), 828 So.2d 1212 ).
The same standard is employed by appellate courts when reviewing an injunction. See Easterling v. Estate of Miller , 14-1354, p. 6 (La. App. 4 Cir. 12/23/15), 184 So.3d 222, 226 (citations omitted) (where this Court held that "[t]rial courts have great discretion in deciding whether to grant or deny a preliminary injunction, and we will not disturb their ruling absent a clear abuse of discretion..... Where one or more legal errors interdict the trial court's fact-finding process, the abuse of discretion standard becomes inapplicable, and we conduct our own de novo review of the record.").
Moreover, the standard of review for a motion in limine is abuse of discretion. See Cooper v. Pub. Belt R.R. , 02-2051, p. 3 (La. App. 4 Cir. 1/22/03), 839 So.2d 181,183.
DISCUSSION
Deep South asserts that the district court erred: (1) in finding River Rental *378 met its burden of proving an implied dedication; (2) in finding River Rental met its burden of proving a statutory dedication; (3) in finding River Rental met its burden of proving acquisitive prescription; (4) in allowing River Rental to cumulate a possessory action with a petitory action; (5) in finding that River Rental is subject to a servitude over the property even though it has access to a roadway; (6) in reforming a document of title without authority; and (7) in its failure to rule that any servitude of ingress and egress was extinguished by confusion as a result of Deep South acquiring, both, the dominant and servient estates. We will address each of these errors, although some may be combined and reviewed out of order for consistency and ease of reading.
Motion in Limine
Deep South argues that the district court erred by allowing River Rental to cumulate a possessory action with a petitory action. Deep South, prior to trial, filed a motion in limine and motion to strike requesting that:
• River Rental be prohibited from introducing any evidence other than:
a. proof that River Rental acquired ownership from a previous owner or by acquisitive prescription, if the court found that Deep South was in possession of the property; or
b. proof of a better title than Deep South, if the Court found that the latter is not in possession.
• An order striking any allegation by River Rental that was inconsistent with the above limitations; and
• An order declaring that River Rentals filed a petitory action by claiming acquisitive prescription of thirty years, waiving claims of possession pursuant to Art. 3657 Code of Civil Procedure.[4]
River Rental maintains the district court properly denied the motion because it was seeking use, not possession, of the roads. River Rental further asserts that the roads became a public servitude through thirty year acquisitive prescription, or alternatively, through dedication-statutory and implied.
The district court denied Deep South's motion in limine and reasoned:
Plaintiffs do not claim personal ownership of the servitude along Commerce Street and the Unnamed Roadway. Rather, they claim that the general public has acquired a servitude by use of these streets for over 30 years. Thus, articles 707, 740, and 742 of the Louisiana Civil Code govern here; and not, as defendant argues, articles 3661 and 3657 of the Louisiana Code of Civil Procedure.
A possessory action is proper when "the ownership or title of the parties to the immovable property or real right therein is not at issue." La. C.C.P. art. 3661. In the case sub judice , use, not ownership, is at issue. Accordingly, we find the district court did not abuse its discretion in denying the motion in limine .
Other Issues
Deep South contends that River Rental cannot claim a servitude of egress or ingress over its property because: (1) River Rental is not landlocked and has access to a roadway; (2) the district court reformed the documents that provided a *379 servitude of ingress and egress on Commerce Street and Unnamed Roadway to a servitude in favor of the general public; and (3) when Deep South purchased the land, it became the owner of the dominant and the servient estate, resulting in extinguishment of the servitude of egress and ingress depicted in the surveys.
Review of the district court's judgment and reasons for judgment reveals that the district court did not directly rule on these issues. "It is well settled that when a trial court's judgment is silent with respect to a party's claim, or an issue placed before the court, it is presumed that the trial court denied the relief sought." Loria v. Petunia's Rest ., 02-1712, p. 3 (La. App. 4 Cir. 7/9/03), 852 So.2d 510, 512 (citations omitted).
Notwithstanding, Deep South claims that the district court erroneously relied on the servitude language contained in the 2013 survey and Cash Sale of Property between Burmaster and Deep South[5] and reformed the documents to support its finding that a public servitude existed. Additionally, Deep South argues, assuming a servitude existed, it was extinguished by confusion, citing La. C.C. art. 765.[6]
River Rental counters that it does not claim it is landlocked,[7] and it points out that the arguments regarding the servitude of ingress and egress are inapplicable. River Rental declares that the district court's reference to ingress and egress in the 2013 survey and act of sale simply showed Burmaster's intent for the sale to be subject to the public servitude. We agree. The district court found the "existence of a servitude in favor of the general public along Commerce Street and the Unnamed Roadway." Thus, the arguments asserted by Deep South regarding a servitude of ingress and egress are inapplicable in this case.
Public Servitude
As discussed supra, the district court found a servitude in favor of the general public along Commerce Street and the Unnamed Roadway. A road may be either public or private. A public road is one that is subject to public use. The public may own the land on which the road is built or merely have the right to use it. La. C.C. art. 457. In St. Charles Par. Sch. Bd. v. P & L Inv. Corp. , 95-2571, p. 3 (La. 5/21/96), 674 So.2d 218, 221, abrogated in part by Cenac v. Pub. Access Water Rights Ass'n , 02-2660 (La. 6/27/03), 851 So.2d 1006, the court explained:
When a private person owns the land on which a public road is built and the public merely has the right to use it, the land is a private thing subject to public use. A.N. Yiannopoulos, Property § 96, at 206 (2 Louisiana Civil Law Treatise 3d ed. 1991). The public may acquire an interest in the land on which a road is built or in the use of a road through purchase, exchange, donation, expropriation, *380 prescription or dedication. Yiannopoulos, Property § 96, at 207.
Louisiana courts have recognized four modes of dedication of a private road to public use:
Our legislature has never enacted a comprehensive scheme governing dedication to public use. St. Charles Parish Sch. Bd. v. P & L Inv. Corp. , 95-2571, p. 4 (La. 5/21/96), 674 So.2d 218, 221 ; Garrett v. Pioneer Prod. Corp. , 390 So.2d 851, 854 (La.1980). The subject has thus been a controversial one. Garrett , 390 So.2d at 854. In the absence of such a comprehensive scheme, our courts have recognized four modes of dedication to public use: (1) formal, (2) statutory, (3) implied, and (4) tacit. P & L Inv. Corp. , 95-2571 at p. 4-5, 674 So.2d at 221.
Cenac , 02-2660, p. 5, 851 So.2d at 1011.
The district court further found formal dedication was inapplicable and tacit dedication was not proven; and we agree. Thus, the question before this Court is whether the district court erred in finding a servitude in favor of the general public along Commerce Street and the Unnamed Roadway that was established by implied dedication, statutory dedication, and/or acquisitive prescription.
Implied dedication
Deep South argues that the district court erred in finding an implied dedication of Common Street and Unknown Roadway.
In Cenac , 02-2660, pp. 6-8, 851 So.2d at 1011-12 (footnote omitted), the Supreme Court explained implied dedication:
Implied dedication is a common law doctrine, but it has been recognized by Louisiana courts since the nineteenth century. See id. at p. 5, 674 So.2d at 222. See also Municipality No. 2 v. Orleans Cotton Press , 18 La. 122 (1841) (citing City of Cincinnati v. White's Lessee, 31 U.S. (6 Pet.) 431, 8 L.Ed. 452 (1832) ). No particular formalities are required to effectuate an implied dedication. 2 A.N. Yiannopoulos, Louisiana Civil Law Treatise, Property § 98, at 214 (4th ed.2001). Traditionally, because implied dedication lacks the formalities and safeguards of the other modes of dedication, the two indispensable elements of implied dedication required by the courts are "a plain and positive intention to give and one equally plain to accept." P & L Inv. Corp. , 95-2571 at p. 5, 674 So.2d at 222 (quoting Carrolton [Carollton] Rail Rd. Co. v. Municipality No. Two , 19 La. 62, 71 (1841) ). See also Humphreys v. Bennett Oil Corp. , 195 La. 531, 197 So. 222 (1940) ; Bomar v. City of Baton Rouge, 162 La. 342, 110 So. 497 (1926) ; De Grilleau v. Frawley , 48 La. Ann. 184, 19 So. 151 (1896) ; Town of Carrollton v. Jones , 7 La. Ann. 233 (1852) ; Yiannopoulos § 98, at 214. Thus, implied dedication requires an unequivocally manifested intent to dedicate on the part of the owner and an equally clear intent to accept on the part of the public.
* * *
The weight of authority establishes that an implied dedication gives rise to a servitude of public use and does not transfer ownership. Id. at p. 6, 674 So.2d at 222 ; Arkansas-Louisiana Gas Co. v. Parker Oil Co. , 190 La. 957, 183 So. 229, 240 (1938) ; James v. Delery , 211 La. 306, 29 So.2d 858 (1947). See also Yiannopoulos § 98, at 217; 11A Eugene McQuillin, The Law of Municipal Corporations § 33.68 (3rd ed.2000).
The burden of proving the implied dedication falls upon the party asserting the dedication. Jones , 7 La. Ann. at 235 ; Drabik v. Town of East Lyme , 234 Conn. 390, 662 A.2d 118 (1995) ; State ex rel. Haman v. Fox , 100 Idaho 140, 594 P.2d 1093 (1979) ;
*381 Derby Heights, Inc. v. Gantt Water & Sewer Dist. , 237 S.C. 144, 116 S.E.2d 13 (1960) ; McQuillin § 33.11. The question of intent to dedicate to public use is one of fact. Donaldson's Heirs v. City of New Orleans , 166 La. 1059, 1063, 118 So. 134, 135 (1928). See also Mihalczo v. Borough of Woodmont , 175 Conn. 535, 400 A.2d 270 (1978) ; Viscardi v. Pajestka , 576 S.W.2d 16 (Tex.1978) ; Cooper v. City of GreatBend , 200 Kan. 590, 438 P.2d 102 (1968). The factual findings of a trial court should not be set aside by a court unless they are manifestly erroneous or clearly wrong. Arceneaux v. Domingue , 365 So.2d 1330 (La.1978).
Deep South challenges the district court's finding of an implied dedication on the basis that no evidence was offered by River Rental to prove a "plain and positive intention to give and one equally plain to accept" as required by Cenac. Deep South urges that "[t]he actions of Burmaster in dedicating Derrick Road, while choosing not to dedicate the alleged servitude-No Name [sic] Road and Commerce Road [sic]-although he could have, indicate that Burmaster had no intention to dedicate the No Name [sic] Road and Commerce Road [sic]."
In finding an implied dedication, the district court reasoned:
Defendant suggests plaintiffs failed to meet their burden as to implied dedication, since plaintiffs' evidence at trial did not show a plain and positive intent on the part of Burmaster Land to dedicate Commerce Street and the Unnamed Roadway to public use. The Court disagrees.
Courts have found an implied dedication when the owner of a tract of land subdivides it into lots, designates streets or roads on a map, and then sells the property or any portion of it with reference to the map. St. Charles Parish Sch. Bd. v. P & L Investment Corp., 95-2571, pp. 5-6 (La. 5/21/96), 674 So.2d 218, 222, reversed (on other grounds) by Cenac, supra ; Vernon Parish Police Jury v. Buckley, 02-91, p. 3 (La. App. 3d Cir. 10/2/02), 829 So.2d 610, 612, writ denied, 03-0400 (La. 10/10/03), 855 So.2d 345. Such an implied dedication establishes a servitude of public use. St. Charles Parish Sch. Bd., supra ; Becnel v. Citrus Lands of Louisiana. Inc., 429 So.2d 459, 461 (La. App. 4 Cir. 1983), writ denied, 437 So.2d 1147 (La. 1983).
The Court finds that plaintiffs provided sufficient evidence to meet their burden of proof with respect to implied dedication. As noted above, plaintiffs introduced four separate subdivision surveys at trial, with accompanying sales referring to those surveys, to evidence the clear intent of the Burmasters [sic] to dedicate Commerce Street and the Unnamed Roadway as public streets. The 1968 survey shows the creation of lots along the proposed 50-foot streets. The Burmasters [sic] then sold lots 1A and IB as shown on the 1968 survey, and the survey was attached to the sale of a lot to Allied Building Co-Ordinators, Inc. and filed into the conveyance records of Plaquemines Parish. The 1971 survey again shows the creation of various lots along the 50-foot streets. The Burmasters [sic] sold off Lots 3B, 3C1, 3C2, and 2J, with reference to the 1971 survey, and the survey was recorded in the conveyance records of Plaquemines Parish, attached to the sale to Harvey Specialty and Supply, Inc. The 1973 survey shows the creation of lots in the industrial park, along with location of the proposed streets. This plat was recorded in the conveyance records of Plaquemines Parish when it was attached to the Act of Dedication of Derrick Road.
*382 The most persuasive evidence of Burmaster's intent to dedicate Commerce Street and the Unnamed Roadway as public streets is the 2013 subdivision plan, on which Commerce Street and the Unnamed Roadway are marked with the wording "servitudes of ingress and egress." The 2013 plan was approved by the Plaquemines Parish Council and was recorded in the parish conveyance records.
The Burmasters [sic] then sold off lot A-1, including in the sale a reference to the 2013 subdivision plan. Defendant argues that the Louisiana Supreme Court, in Cenac, supra, overruled St. Charles Parish Sch. Bd. in its entirety, including the holding that the subdivision of a tract of land into lots on a survey, and the subsequent selling of those lots with reference to the survey, create an implied dedication of the streets shown on the survey. But Cenac did not overrule that holding; it only clarified St. Charles Parish Sch. Bd.'s apparent requirement that the parish maintain the streets for an implied dedication to exist, stating:
The jurisprudence [,] suggesting that maintenance by the municipality is required before an implied dedication can be made [,] is an aberration in our law. As explained above, all that has traditionally been required for an implied dedication is an unequivocally manifested intent to dedicate on the part of the owner and an equally clear intent to accept on the part of the public.
Cenac, 02-2260 at p. 7, 851 So.2d at 1012.
Not only did the evidence at trial show the clear intent of the Burmasters [sic] to dedicate Commerce Street and the Unnamed Roadway to public use, but there was abundant evidence of the public's clear intent to accept the dedication of the two streets to public use.... [P]laintiffs provided numerous witnesses who testified to the public use of Commerce Street and the Unnamed Roadway, without title or good faith, for a period in excess of 30 years prior to Deep South's placing of gates across those streets. This uninterrupted use is sufficient for the public to have acquired a right of passage over the streets by implied dedication.
Our review of the district court's reasons for judgment reveals that the district court effected a clear and comprehensive application of the law to the facts of this case. The record supports the reasons and analysis employed by the district court in finding the Burmaster's unequivocally intended to dedicate Commerce Street and Unnamed Road to public use and the public's clear acceptance. Accordingly, we find the district court did not err in finding an implied dedication of a servitude in favor of the general public along Commerce Road and Unnamed Roadway.
Statutory dedication and Acquisitive Prescription
Deep South asserts River Rental failed to meet its burden of proof as to statutory dedication and adverse possession. Because this Court found the district court did not err in finding a public servitude was created via implied dedication, whether a public servitude was established by statutory dedication and acquisitive prescription need not be addressed and are pretermitted.
CONCLUSION
The district court's June 14, 2017 judgment is affirmed.
AFFIRMED

Deep South is the Defendant/Plaintiff-in-Reconvention in this matter.

River Rental is the Plaintiff/Defendant-in-Reconvention in this matter.

Documents, which included the Cash Sale of Property and surveys from 1968, 1971, 1973, 1974, 2010, and 2013 that will be discussed infra , were admitted into evidence at trial for the limited purpose of showing information on the servitude that was created.

La. C.C.P. art. 3657 provides in part: "The plaintiff may not cumulate the petitory and the possessory actions in the same suit or plead them in the alternative, and when he does so he waives the possessory action. If the plaintiff brings the possessory action, and without dismissing it and prior to judgment therein institutes the petitory action, the possessory action is abated."

On the 2013 survey by Mr. McCurdy, there are notations of "servitude of ingress and egress" indicated on Commerce Street and Unnamed Roadway. Additionally, the Cash Sale of Property from Burmaster to Deep South includes a paragraph referencing the roads are subject to servitudes:
THE PARTIES TAKE COGNIZANCE THAT THE PROPERTY IS SUBJECT TO THE FOLLOWING, TO WIT:
* * *
III. [S]ervitude for ingress and egress for Commerce Street, an [sic] unnamed roadway as shown on survey by Hugh McCurdy, III, PLS dated June 18, 2013.

La. Civil Code art. 765 provides that "[a] predial servitude is extinguished when the dominant and the servient estates are acquired in their entirety by the same person."

Although River Rental asserted in the Petition the right to a servitude of ingress and egress, it abandoned that argument at trial.