WHIPPLE, C.J.
*358 This matter is before us on appeal by plaintiff, John W. Templeton, from a judgment of the trial court decreeing that no predial servitude of passage exists over the property of defendant, Lloyd Joseph Jarreau, Jr., and dismissing Templeton's claims for injunctive relief and damages. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On January 24, 2002, Brian and Lorie Threeton purchased a parcel of land in Pointe Coupee Parish designated as Lot 6 on a plat by William H. Pringle, C.E. and Land Surveyor, dated November 27, 1970 (the "Pringle map"), via an act of cash sale from Travis P. Smith, Jr.[1] The Pringle map indicated that Lot 6 is bordered by a "road" along its eastern boundary.
Shortly after purchasing Lot 6, Brian and Lorie Threeton commissioned a survey by Russel L. Mistric, a Licensed Professional Land Surveyor with C. Mistric Surveyors, Inc., to subdivide Lot 6 into four sections. On February 20, 2002, the "Mistric map" was prepared, which shows the "resubdivision of Lot 6 ... into Lots 6A, 6B, 6C, & 6D."[2] The Mistric map provided a fifteen-foot "private servitude of passage for Lots 6C & 6D," along the southern boundary of Lots 6C and 6B, providing access to Reno Street (shown as the "road" on the Pringle map), which runs along the eastern boundary of Lots 6B and 6A. The Mistric map further contained a "dedication," which provided:
The rights of way shown hereon, if not previously dedicated, are hereby dedicated to the perpetual use of the public. All areas shown as servitudes are granted to the public for the use of utilities, drainage, sewage removal or other proper purposes for the general use of the public. No building, structure, or fence shall be constructed, nor shrubbery planted within the limits of any servitudes so as to prevent or unreasonably interfere with any purpose for which the servitude is granted.
Although the Mistric map was not recorded, Lots 6A through 6D, as subdivided therein, were subsequently sold and acquired by various owners.
Plaintiff, John W. Templeton, is the current owner of Lots 6A, 6C, and 6D. Templeton purchased Lots 6C and Lot 6D by a quitclaim deed from Bobby and Lorie Sullivan on May 20, 2007, which was recorded in the conveyance records on May 22, 2007. The legal description of the property contained a reference to "Exhibit A," which Templeton contends is a portion of the Mistric map showing Lot 6C and its adjacent lots as well as a fifteen-foot servitude of passage across Lots 6C and 6B. Templeton subsequently purchased Lot 6A from CMH Homes, Inc. by act of cash sale on November 18, 2008, which was recorded in the conveyance records on January 26, 2009. The legal description of the property therein specifically referenced the Mistric map.
Defendant, Lloyd Joseph Jarreau, Jr., is the owner of Lot 6B, which is adjacent to Lots 6C and 6A. Jarreau purchased Lot 6B from Priscilla Lynn Leon by an act of cash sale on February 27, 2008, which was subsequently recorded in the conveyance records on March 14, 2008. The act of sale, however, described Lot 6B as designated *359 by the Pringle map, despite the fact that the Pringle map showed Lot 6 prior to its subdivision into Lots 6A through 6D, and made no reference to the Mistric map.
On October 10, 2016, Templeton filed a petition for injunctive relief and damages against Jarreau, contending that Lot 6B was burdened by a fifteen-foot servitude of passage along its southern boundary for the benefit of Lots 6C and 6D, as shown on the Mistric map, and that since Jarreau's taking possession of Lot 6B in 2008, Jarreau has interfered with and actively blocked Templeton's use of the servitude. Templeton further contended that he has been unable to lease or market Lot 6C without granting access to Lot 6A, which was adjacent to Lot 6B. Templeton thus sought a mandatory and permanent injunction ordering Jarreau to remove any obstacles, which restrict or interfere with Templeton's use of said servitude, and to cease all actions tending to make use of the servitude more inconvenient or burdensome to Templeton. Templeton also sought damages and costs.
On November 2, 2016, Jarreau filed a peremptory exception of prescription contending that a predial servitude of passage never existed over his property, and that if it had, it had not been used for a period in excess of ten years and was thereby prescribed due to nonuse pursuant to LSA-C.C. art. 753.[3] Jarreau later filed an answer to the petition, on May 23, 2017, denying that a predial servitude of passage was ever created or ever existed across his property as alleged by Templeton, and further averring that the Mistric map relied on by Templeton had never been recorded. He thus argued that no injunction should be issued.
Although the matter was set for trial on July 11, 2017, according to the transcript, the trial court met with counsel in chambers on that date, after which counsel for Templeton offered, filed, and introduced certain exhibits on the record. The trial court thereafter ruled that the instrument conveying title to Jarreau, i.e., the Pringle Map, did not reference a predial servitude on the eastern side of the property, while it did reference a servitude on the south side of the property. The trial court further stated that the only reference to the servitude of passage is on the Mistric Map and that the Mistric Map did not "do enough for the Court to actually convey title because there is no reference whatsoever to an eastern predial servitude of Lot C-6."
At Templeton's request, the trial court subsequently issued written reasons for judgment, finding as follows:
The instrument which conveys Lot C-6, which is the subject of this proceeding, makes no reference to an eastern servitude. Although the instrument references and attaches the "[Mistric] Map," which does indicate an eastern servitude, this is not enough to convey the servitude. Of note, the same instrument recites a predial servitude on the south side of the property conveying same; it is also included on the "[Mistric] Map."
In order for the eastern predial servitude to have been conveyed, it needed to be referenced and more clearly conveyed in the conveyance instrument, as was the case for the servitude on the southern portion of the property.[4 ]
*360 On August 21, 2017, the trial court signed a judgment, decreeing that "no predial servitude of passage existed over and across the property of [Jarreau]," and dismissing Templeton's claims at Templeton's costs.[5]
Templeton subsequently filed a motion for new trial and supporting memorandum, contending that there was an implied dedication of the servitude and that the trial court's ruling, based solely on a review of the documents, had precluded any testimony concerning use of the servitude or of Jarreau's position as a holder of a quitclaim deed from a non-owner. Templeton urged therein that where the dedication of a servitude is implied, there is no requirement that the deed or notarial act refer to the servitude, and that a new trial should be granted to consider the testimony of the subdividers of the property and prior true owners and ancestors in title. The motion for new trial was denied by the trial court on September 7, 2017.
Templeton now appeals, contending that the trial court erred as a matter of law in determining that no servitude of passage existed over Lot 6B, where the documents herein are sufficient to create an implied servitude of passage across Jarreau's property, i.e., Lot 6B.
DISCUSSION
A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners. LSA-C.C. art. 646. There must be a benefit to the dominant estate. There is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate. LSA-C.C. art. 647. The owner of the servient estate is not required to do anything. His obligation is to abstain from doing something on his estate or to permit something to be done on it. He may be required by convention or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate. LSA-C.C. art. 651.
Predial servitudes may be established by an owner on his estate or acquired for its benefit. Predial servitudes are established on, or for the benefit of, distinct corporeal immovables and the use and extent of such servitudes are regulated by the title by which they are created.[6]
*361 LSA-C.C. arts. 697 and 698. However, if the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in light of its purpose. LSA-C.C. art. 749. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. LSA-C.C. art. 730.
A right of passage is an example of a predial servitude. See LSA-C.C. art. 699. The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. LSA-C.C. art. 705.
Templeton argues on appeal: (1) that there was a subdivision of the property (Lot 6); (2) that the Mistric Map, which subdivided Lot 6 into Lots 6A through 6D, shows a servitude of access across Lot 6B in favor of Lots 6C and 6D; (3) that portions of the subdivision plat were filed with various deeds in Jarreau's chain of title; and (4) that lots were sold on the basis of the subdivided plat, which resulted in an implied dedication of a servitude. Templeton concedes that the complete Mistric Map was never recorded and that no deed or quitclaim transfer expressly mentions the servitude, but contends that a copy of a portion of the Mistric map attached to the Leon quitclaim deed (Jarreau's predecessor-in-title) and a reference to the Mistric map as "EXHIBIT A" in Templeton's deed are sufficient to establish an implied servitude of passage.[7]
Louisiana courts have recognized four modes of dedication to public use: (1) formal, (2) statutory, (3) implied, and (4) tacit. Cenac v. Public Access Water Rights Association, 2002-2660 (La. 6/27/03), 851 So.2d 1006, 1011. Implied dedication is a common law doctrine, but it has been recognized by Louisiana courts since the nineteenth century. See St. Charles Parish School Board v. P & L Investment Corporation, 95-2571 (La. 5/21/96), 674 So.2d 218, 222.
The essential feature of implied dedication is an absence of requisite formalities. 4 A.N. Yiannopoulos, Louisiana Civil Law Treatise, Property § 11:20 at 676 (4th ed. 2013). Because implied dedication lacks the formalities and safeguards of the other modes of dedication, the two indispensable elements of implied dedication required by the courts are "a plain and positive intention to give and one equally plain to accept." St. Charles Parish School Board v. P & L Investment Corporation, 674 So.2d at 222. The plain and positive intent to dedicate must be shown by language or acts so clear as to exclude every other hypothesis but that of dedication. Cenac v. Public Access Water Rights Association, 851 So.2d at 1014.
A servitude by implication can only be found where the servitude is *362 shown on a recorded survey map pursuant to which the property is sold and described, and the language in the deed or on the survey map clearly expresses the intention to establish a servitude for the benefit of owners of neighboring property, by use of words such as "common," "public," or such other designation. Robert Investment Company, Inc. v. Eastbank, Inc., 496 So.2d 465, 469 (La. App. 1st Cir. 1986), (citing James v. Delery, 211 La. 306, 29 So.2d 858 (1947), and Iseringhausen v. Larcade, 147 La. 515, 85 So. 224 (1920) ). However, where an act of sale is silent as to an easement, but the survey plat referred to in the property description, which was attached to a previous act of sale that was recorded in the conveyance records, indicated that there was an easement, a servitude is created. Tate v. South Central Bell Telephone Company, 386 So.2d 139, 140 (La. App. 3rd Cir. 1980).
The weight of authority establishes that an implied dedication gives rise to a servitude of public use and does not transfer ownership. Cenac v. Public Access Water Rights Association, 851 So.2d at 1012 ; St. Charles Parish School Board v. P & L Investment Corporation, 674 So.2d at 222. Moreover, the burden of proving the implied dedication falls upon the party asserting the dedication and the question of intent to dedicate to public use is one of fact. Cenac v. Public Access Water Rights Association, 851 So.2d at 1012. As such, factual findings of a trial court should not be set aside by a court unless they are manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978).
Templeton contends that a portion of the Mistric map is attached to the quitclaim deed by which Jarreau's predecessor-in-title, Priscilla Lynn Leon, acquired Lot 6B from Bobby and Lorie Sullivan on October 2, 2005, which was filed in the conveyance records on October 3, 2005. Thereafter, Jarreau purchased Lot 6B from Priscilla Lynn Leon by act of cash sale on February 27, 2008. The act of sale was recorded in the conveyance records on March 14, 2008. The only plat referenced therein, however, is the Pringle map, which was prepared prior to the subdivision of Lot 6 into parts A through D by the Mistric map and is silent as to a servitude of passage along the southern boundary. The act of sale to Jarreau is likewise silent as to the servitude claimed by Templeton herein.[8]
Relying on Becnel v. Citrus Lands of Louisiana, Inc., 429 So.2d 459 (La. App. 4th Cir.), writ denied, 437 So.2d 1147 (La. 1983). Templeton contends that showing a servitude on a plat, then making transfers based on the plat and servitude is a form of implied dedication. We nevertheless find Becnel distinguishable herein, where, unlike the instant case, in Becnel, the subdivision plat at issue was recorded in the conveyance records. See Becnel v. Citrus Lands of Louisiana, Inc., 429 So.2d at 460.
In the case before us, the sale of the property to Jarreau did not reference the Mistric map, which contained the purported servitude of passage. Thus, to the extent that Templeton relies on Becnel, and James for that matter, we find that those cases are not controlling herein. Moreover, unlike the instant case, the plat in James was recorded prior to the sale of lots in the subdivision. See James v. Delery, 211 La. at 308, 29 So.2d at 859.
Templeton also relies on Garrett v. Pioneer Production Corporation, 390 So.2d 851 (La. 1980), where the court found that *363 where sales were made prior to the recordation of the plats referenced therein, and the plats were subsequently recorded, "it is enough that the plats were filed ... and that the plaintiffs' ancestors in title, rather than objecting to or disavowing the plats, expressly relied upon them in their transactions involving the property" to conclude that plaintiffs ancestors in title intended to statutorily dedicate the streets. Garrett v. Pioneer Production Corporation, 390 So.2d at 857-858. However, again, in Garrett, the plat relied upon therein was filed or recorded.
Finally, relying on Southern Amusement Company, Inc. v. Pat's of Henderson Seafood & Steak, Inc., 2003-767 (La. App. 3rd Cir. 3/31/04), 871 So.2d 630, Templeton contends that when a subdivider sells any part of the property with reference to the map, the servitude created by that act becomes a public right of way. On review, however, we note that in Southern Amusement Company, Inc., the cash deed and a subsequent act of correction of deed that purportedly established the predial servitude at issue therein were filed in the conveyance records. See Southern Amusement Company, Inc. v. Pat's of Henderson Seafood & Steak, Inc., 871 So.2d at 631. Accordingly, we are not persuaded by this line of jurisprudence.
On the record before us, it appears that the parties submitted the matter on briefs before the trial court, and no evidence of the parties' intent, in the form of testimony, affidavits, or otherwise, was introduced.[9] Templeton contends in his brief on appeal, however, that "the intent of the parties" can be determined "by an examination of the documents that they executed."
Accordingly, on review of the documents introduced herein, we agree that Templeton failed to meet his burden of establishing an implied dedication of a servitude of passage over Lot 6B. A servitude by implication can only be found where the servitude is shown on a recorded survey map pursuant to which the property is sold and described,see Robert Investment Company, Inc. v. Eastbank, Inc., 496 So.2d at 469, and the sale of Lot 6B to Jarreau herein is based on a recorded survey plat, the Pringle map, which bears no mention of a servitude of passage over Lot 6B. Moreover, the Mistric map, which Templeton contends is referred to in other conveyances and of which portions of same are attached, has undisputedly never been *364 recorded in the conveyance records of Pointe Coupee Parish.
Thus, on review we are constrained to find no error in the judgment of the trial court decreeing that no predial servitude of passage exists over and across the property of Jarreau and dismissing Templeton's claims at Templeton's costs.
CONCLUSION
For the above and foregoing reasons, the August 21, 2017 judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff/appellant, John W. Templeton.
AFFIRMED.

The Pringle map was a plat showing a subdivision of land of the Estate of Joseph Reno acquired from Dr. John A. Haas by deed dated March 30, 1920.

The survey will be referred to herein as the "Mistric map" although it is erroneously referred to in the trial court's written reasons and the transcript as the "Mystric map."

Louisiana Civil Code article 753 provides that a predial servitude is extinguished by nonuse for ten years.

In its oral and written reasons, the trial court referred to the servitude sought by Templeton herein as an "eastern" predial servitude over Lot 6B. In fact, the trial court noted in both its oral and written reasons that the instrument conveying title to Jarreau, which references the Pringle map, does not reference a servitude on the eastern side, while it does reference a servitude on the southern side. However, according to the pleadings and exhibits contained in the record, as well as the parties' argument in brief, Templeton is seeking a servitude of passage over the "southern "-most fifteen feet of Lot 6B in favor of Lot 6C for the benefit of Lots 6C and 6D, and the Pringle map shows an established "road" on the "eastern " boundary of Lot 6. The judgment of the trial court before us on appeal nonetheless simply decrees that "no predial servitude of passage exists over and across the property of [Jarreau]." Because this court reviews judgments and not reasons for judgment, see LAD Services of Louisiana, L.L.C. v. Superior Derrick Services, L.L.C., 2013-0163 (La. App. 1st Cir. 11/7/14), 167 So.3d 746, 753, writ not considered, 2015-0086 (La. 4/2/15), 162 So.3d 392, on review of the trial court's judgment herein, we will consider whether the trial court correctly determined that no predial servitude of passage exists across the southern boundary of Lot 6B as sought by Templeton in these proceedings.

The trial court's determination that no predial servitude of passage exists seemingly rendered moot Jarreau's peremptory exception of prescription averring extinguishment of the servitude by ten-years nonuse.

The establishment of a predial servitude by title is an alienation of a part of the property to which the law's governing alienation of immovables apply. LSA-C.C. art. 708. Predial servitudes are established by all acts by which immovables may be transferred. LSA-C.C. art. 722. Moreover, a predial servitude may be established on a certain part of an estate, if that part is sufficiently described. LSA-C.C. art. 727.

Counsel for Templeton contends that much of this dispute is a result of a series of very poorly drafted legal documents, which appear to have been prepared by the parties to the various transactions. Templeton concedes that the series of title documents leading to Jarreau's acquisition of Lot 6B are "so poorly prepared and drafted" that Jarreau's deed to Lot 6B would require more than one act of correction and that the deeds, as filed, may not have conveyed any title to Jarreau. He further concedes that none of the poorly drawn donation and quitclaim deeds ever expressly mentioned the Mistric map so as to sufficiently convey the servitude of passage by title .

It is undisputed that Jarreau's title to Lot 6B is silent as to the existence of a servitude and that the Pringle map referenced in Jarreau's title, which is recorded in the conveyance records, does not contain a servitude of passage across Lot 6B.

The transcript indicates that at the hearing, counsel for Templeton did not attempt to call witnesses, did not place any objections on the record, and did not request to proffer any testimony given the trial court's alleged refusal to allow testimony. In fact, at the commencement of the hearing, counsel for Templeton stated, "We had a short meeting in Chambers and the parties agree that the documents that's been submitted and attached to our pre-trial memos ... [w]e essentially decided the issue of whether or not there is a servitude on this property ... [a]nd we agree that there's no need for any individual testimony because the documents are what the documents are." In his brief on appeal, Templeton confirmed that "[t]he parties agreed that since the claim would be almost entirely based on documents, they would submit the matter on briefs. Both sides filed memos with deeds and copies of documents attached." Again, in his statement of facts, Templeton confirmed that "[t]he matter was submitted on briefs."
In his motion for new trial, however, Templeton raised the theory of implied dedication, arguing that the trial court's dismissal of his claims was error. Templeton further argued that the ruling of the trial court "precluded any testimony of the use of the servitude or of Mr. Jarreau's position as a holder of a [quitclaim] deed from a non-owner" and the "fact that his deed was defective and should be corrected opens the door to statements from prior owners as to the existence of the servitude" such that a new trial should be granted.