NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0413

DR. JOHN K. SMART M.D. AND
MR. MARK CHRISTOPHER SAUCIER

VERSUS

BRYCE AMOND

*Judgment Rendered:*   FEB 0 8 2024

* * * * * * * *

Appealed from the
21st Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Case No. 2021-0002476, Division C

The Honorable Erika W. Sledge, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Russell C. Monroe<br>Ponchatoula, Louisiana | Counsel for Plaintiffs/Appellants<br>Dr. John K. Smart, M.D. and<br>Mark Christopher Saucier |
| Patrick G. Coudrain<br>Andre G. Coudrain<br>Hammond, Louisiana | Counsel for Defendant/Appellee<br>Bryce Amond |

* * * * * * * *

BEFORE: THERIOT, HESTER, AND MILLER, JJ.

**THERIOT, J.**

Dr. John K. Smart, M.D., and Mark Christopher Saucier appeal the 21st Judicial District Court's December 5, 2022 judgment granting Bryce Amond's motion for summary judgment and denying Dr. Smart and Mr. Saucier's motion for summary judgment. For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Appellants, Dr. John K. Smart, M.D., and Mark Christopher Saucier, reside in Ponchatoula, Louisiana, on immovable property owned by Dr. Smart. Appellee, Bryce Amond, owns and resides on property south of Dr. Smart's property. The instant appeal relates to Mr. Amond's usage of a driveway that crosses over Mr. Smart's land to reach his own home.

The two properties at issue were once a single tract of land, consisting of approximately 12.6 acres, purchased by Errol and Virginia Bordelon in 1995. The Bordelons subsequently partitioned the single tract of land into the two tracts at issue, which are made up of approximately 11.5 acres and 1.1 acres respectively. Mr. Smart currently owns the 1.1-acre tract of land ("the Smart property"), while Mr. Amond owns the 11.5-acre tract ("the Amond property"). Both properties were sold on several occasions prior to Dr. Smart and Mr. Amond acquiring ownership of their respective tracts. Dr. Smart purchased the Smart property on September 25, 2020. Mr. Amond and his wife, Brandi Amond, acquired the Amond property on November 20, 2020.

On August 27, 2021, Dr. Smart and Mr. Saucier filed a "Petition for [Restraining] Order, Declaratory Judgment, and Damages," naming Mr. Amond as defendant. Dr. Smart and Mr. Saucier alleged that Mr. Amond had repeatedly trespassed on Dr. Smart's driveway, which runs down the west side of the Smart property, in order to reach his own property. They further alleged that the

2

driveway is private and that Mr. Amond's alleged trespasses had interfered with their use and enjoyment of the property.[1]

Dr. Smart and Mr. Saucier sought a declaratory judgment stating, in pertinent part, that the property is owned by Dr. Smart, who has use of the driveway; Mr. Amond has no right to enter the driveway; and Dr. Smart has full right to establish any fences to prevent Mr. Amond's use of the driveway. Dr. Smart and Mr. Saucier further sought a temporary restraining order and a preliminary injunction prohibiting Mr. Amond and his agents, assigns, and invitees from using the driveway.

On October 6, 2021, Mr. Amond filed an answer wherein he opposed the issuance of a preliminary injunction as it relates to his use of the driveway. He alleged that the driveway at issue is the only driveway that has been used to reach his home over its 120+ year lifespan.

On October 12, 2021, the Bordelons transferred a small strip of land just off of Wadesboro Road to Mr. Amond. As a result of this transfer, the driveway first passes over this strip of land, now owned by Mr. Amond, and then passes over the Smart property.

On October 20, 2021, the trial court signed a stipulated judgment wherein the parties agreed that Mr. Amond and his agents, assigns, and invitees would not enter Dr. Smart's property or harass Dr. Smart or Mr. Saucier.[2]

Pertinently, on August 26, 2022, Dr. Smart and Mr. Saucier filed a motion for summary judgment relating to Mr. Amond's use of the driveway.[3] They argued

---

[1] Dr. Smart and Mr. Saucier specifically allege that Mr. Amond and his agents, assigns, and invitees have disturbed the property by: (1) trespassing on the driveway at issue and on Dr. Smart's property; (2) intentionally throwing fireworks at Dr. Smart and Mr. Saucier in an effort to injure, threaten, harass, assault, and intimidate them; (3) shouting loud derogatory epithets at Dr. Smart and Mr. Saucier; (4) stalking and harassing Dr. Smart and Mr. Saucier on the property; and (5) creating a nuisance by regularly playing music so loud that the sound cannot be ignored and having gatherings in which underaged individuals allegedly drink alcohol provided by Mr. Amond.

[2] In the stipulation, "harassment" was defined to include using the driveway at an unreasonable rate of speed, to watch Dr. Smart and Mr. Saucier, or as a recreational track for bicycles, motorcycles, and other vehicles. The stipulation further defined "harassment" to include Mr. Amond playing or making any unreasonably loud music or noise.

3

that Mr. Amond is not landlocked and can create his own driveway west of Dr. Smart's driveway. They also denied that Mr. Amond had acquired a predial servitude over the driveway via acquisitive prescription.

On October 14, 2022, Mr. Amond filed a motion for summary judgment, arguing that he enjoys a predial servitude of passage by reference over the driveway by title and by acquisitive prescription.

A hearing on the parties' cross motions for summary judgment occurred on October 31, 2022. On December 5, 2022, the trial court signed a judgment granting Mr. Amond's motion for summary judgment and denying Dr. Smart and Mr. Saucier's motion for summary judgment. The trial court specifically found that Mr. Amond enjoys a predial servitude of passage, in title, over the driveway where it crosses over Dr. Smart's property. The trial court further found that Mr. Amond enjoys a predial servitude of passage over the driveway, where it crosses over Dr. Smart's property, by law of acquisitive prescription of ten years of good faith uninterrupted use and possession with just title by Mr. Amond's ancestor-in-title as of the year 2015.

This appeal by Dr. Smart and Mr. Saucier followed.

## ASSIGNMENTS OF ERROR

Dr. Smart and Mr. Saucier assign the following as error:

(1) The trial court committed reversible error in declaring that Amond had a predial servitude in title to the driveway that crosses over Dr. Smart's property, depicted as being within the broken parallel dashed lines in that plat of survey dated March 6, 2001, by Roy C. Edwards, Jr., recorded with, and specifically referenced within the property's legal description in that Act of Cash Sale recorded at COB 921 Page 691, as File No. 587344 of the Record Vol. 2 of Tangipahoa Parish.

(2) The trial court committed reversible error in declaring that Amond's predecessor in title acquired a predial servitude by law of

---

[3] Dr. Smart and Mr. Saucier further sought summary judgment declaring that the repeated playing of "painfully loud" music is a nuisance and prohibiting Mr. Amond and his agents, assigns, and invitees from contacting and harassing Dr. Smart and Mr. Saucier or entering any property owned by Dr. Smart. The trial court noted at the hearing that it would not be proper to render a summary judgment on certain allegations made without evidence being presented. The trial court ultimately denied Dr. Smart and Mr. Saucier's motion for summary judgment in its entirety.

4

acquisitive prescription of ten years good faith uninterrupted use and possession with just title, in 2015.

(3) The trial court committed legal error in failing to declare, in response to Appellants' motion for partial summary judgment, that Amond had no predial servitude of passage or other right to use the driveway on the Smart property through title, or through prescription.

## STANDARD OF REVIEW

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Bass v. Disa Glob. Sols., Inc.*, 2019-1145 (La. App. 1 Cir. 6/12/20), 305 So.3d 903, 906, writ denied, 2020-01025 (La. 11/4/20), 303 So.3d 651.

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.[4] La. C.C.P. art. 966(A)(4); *Bass*, 305 So.3d at 906. The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent's claim, action, or defense. La. C.C.P. art. 966(D)(1). If the moving party points out that there is

---

[4] We note that the motions for summary judgment at issue in this appeal were filed and decided under La. C.C.P. art. 966 prior to its amendment by 2023 La. Acts No. 317, § 1, and 2023 La. Acts No. 368, § 1, which became effective on August 1, 2023.

5

an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); *Bass*, 305 So.3d at 906.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. A "genuine" issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree; if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Bass*, 305 So.3d at 906-07.

## DISCUSSION

### Assignment of Error #1

In their first assignment of error, Dr. Smart and Mr. Saucier argue that the trial court committed reversible error in declaring that Mr. Amond has a predial servitude in title to the driveway that crosses over Dr. Smart's property.

A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners. There must be a benefit to the dominant estate. There is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate. La. C.C. arts. 646 and 647. The owner of the servient estate is not required to do anything. His obligation is to abstain from doing something on his estate or to permit something to be done on it. La. C.C. art. 651; *Templeton v. Jarreau*, 2018-0240 (La. App. 1 Cir. 9/24/18), 259 So.3d 356, 360.

6

Predial servitudes may be established by an owner on his estate or acquired for its benefit. La. C.C. art. 697. The use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the rules set forth in La. C.C. arts. 698 through 774. See La. C.C. art. 697. A right of passage is an example of a predial servitude. See La. C.C. art. 699. The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. La. C.C. art. 705. The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of immovables apply. La. C.C. art. 708. Predial servitudes are established by all acts by which immovables may be transferred. La. C.C. art. 722. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. La. C.C. art. 730; *Brehm v. Amacker*, 2019-1452 (La. App. 1 Cir. 9/21/20), 314 So.3d 58, 62-63, writ denied, 2020-01224 (La. 1/26/21), 309 So.3d 343.

A servitude of passage is created when one subdivides property by plat of survey that designates a right-of-way or servitude of passage and thereafter sells one or more tracts of land by reference to said survey, regardless of whether or not the instrument in question specifically describes or makes reference to the servitude. *Brehm*, 314 So.3d at 63. Where an act of sale is silent as to an easement, but the survey plat referred to in the property description, which was attached to a previous act of sale that was recorded in the conveyance records, indicated that there was an easement, a servitude is created. *Brehm*, 314 So.3d at 63; *Templeton*, 259 So.3d at 362.

Relevant History of the Amond Property

Per the exhibits attached to Dr. Smart and Mr. Saucier's motion for summary judgment and Mr. Amond's opposition to that motion, the relevant ownership history of the Amond property is as follows. The Bordelons purchased the single, 12.6-acre tract of land in 1995. They subsequently partitioned the property into an 11.5-acre tract (the Amond property) and a 1.1 acre tract (the Smart property).

On July 5, 2001, the Bordelons sold the Amond property to Glenda Howell. The act of cash sale specifically provides that "[t]his transfer is subject to such prior servitudes, reservations and lease of record in the office of the Clerk and Recorder for the Parish of TANGIPAHOA, State of Louisiana." The act of cash sale's property description refers to a survey conducted by Roy C. Edwards, Jr. on March 6, 2001 ("the first Edwards map"). The act of cash sale and the first Edwards map were recorded in the conveyance records of Tangipahoa Parish on July 6, 2001.

On November 1, 2005, Ms. Howell sold the Amond property to Troy Koehlar. The November 1, 2005 act of sale included a clause stating that the act of sale is accepted subject to "[a]ny and all restrictions, conditions, servitudes, and encroachments that may be contained in the chain of title and/or plan of subdivision." The property description in the act of sale also refers to the first Edwards map.

In the affidavit of Mr. Koehlar, which is attached to Mr. Amond's opposition to Dr. Smart and Mr. Saucier's motion for summary judgment, Mr. Koehlar stated that he believed that he had acquired a predial servitude of passage over the then-gravel driveway connecting the Amond property to Wadesboro Road. He further stated that he used the driveway without physical or legal interruption during his entire term of ownership of the property. Additionally, Mr. Koehlar attested that

8

he and Lori Rayborn, a prior owner of the Smart property, shared the costs to have the entire driveway paved in asphalt in 2005.

On April 17, 2009, Mr. Koehlar entered into a boundary agreement with a neighbor who owns the property directly east of the Smart property and north of the Amond property. The boundary agreement referenced a more recent survey, performed by Daniel McCabe and dated January 13, 2009 ("the McCabe survey"). Mr. Koehlar and that neighbor agreed to adjust a boundary between their respective properties. This agreement did not relate to the driveway at issue, nor did it purport to establish or extinguish a servitude. The boundary agreement and the McCabe survey were both recorded in the conveyance records of Tangipahoa Parish.

On August 9, 2019, Mr. Koehlar entered into a bond for deed contract with Mr. Amond and his wife relating to the Amond property. The bond for deed contract was mutually cancelled after the parties executed a cash sale of the property on November 20, 2020.

Relevant History of the Smart Property

As established by the above-referenced exhibits, the Bordelons sold the Smart property to Ted Rayborn, Jr. and Lori Rayborn on September 21, 2002. The act of cash sale provides that the purchase is "[s]ubject to all restrictions and servitudes of record." The act of sale, which is recorded in the conveyance records of Tangipahoa Parish, also refers to a second map created by Roy C. Edwards, Jr. ("the second Edwards map"). The second Edwards map shows a servitude of passage, but does not expressly indicate where that servitude ends. The second Edwards map is recorded in the mortgage records of Tangipahoa Parish.

On July 29, 2020, Mr. Rayborn donated his interest in the Smart property to his former wife, Ms. Rayborn. Ms. Rayborn became the owner of the entire 1.1-

acre tract as a result. The property description contained within the donation references the second Edwards map.

On September 25, 2020, Ms. Rayborn sold the 1.1-acre tract of land to Dr. Smart. The act of cash sale further states that it is being made subject to "any and all applicable . . . servitudes [or] rights of way . . . which may appear in the chain of title . . . or elsewhere in the public records of Tangipahoa Parish, Louisiana[.]" The act of cash sale's property description refers to the second Edwards map.

Predial Servitude by Title

The parties present different interpretations of the first Edwards map, which was referenced in and recorded in the conveyance records with the act of sale between the Bordelons and Ms. Howell.

Dr. Smart and Mr. Saucier argue that the first Edwards map fails to delineate the western and southern boundaries of the servitude. They argue that doubt exists relative to the extent and location of the servitude as a result and that said doubt must be resolved in favor of the servient estate pursuant to La. C.C. art. 730. They further argue that the servitude indicated in the first Edwards map ends at the northern boundary of Dr. Smart's property, which would mean that Mr. Amond has no right to access any part of the driveway that crosses through Dr. Smart's property.

Mr. Amond argues that the first Edwards map clearly identifies a roadway, indicated by dashed lines, crossing over the Smart property and connecting the Amond property to Wadesboro road. He further asserts that the only explanation for the dashed lines outside of the bounds of his property in the first Edwards map is the intent to create a predial servitude of passage over the driveway for the benefit of the owner of the 11.5 acre tract.

Following our review of the first Edwards map, we conclude that the map depicts a servitude of passage through the Smart property. The dashed lines, which

10

are labeled "20' Servitude of Passage," clearly begin at Wadesboro Road and end at the northern border of the Amond property. Therefore, although the act of sale between the Bordelons and Ms. Howell does not describe the servitude, the survey plat referred to in the property description and attached to the act of sale and recorded in the conveyance records created a servitude.[5] See Brehm, 314 So.3d at 63.

Considering the foregoing, we find that the trial court properly denied Dr. Smart and Mr. Saucier's August 26, 2022 motion for summary judgment. Because we agree with the trial court's finding that a predial servitude by title exists, we find that the issues raised by Dr. Smart and Mr. Saucier's second and third assignments of error are moot.[6]

Although we affirm the trial court's denial of Dr. Smart's motion for summary judgment due to the existence of a predial servitude by title, we cannot affirm the trial court's judgment insofar as it grants Mr. Amond's motion for summary judgment. Dr. Smart and Mr. Saucier attached a number of exhibits to their August 26, 2022 motion for summary judgment, including acts of sale to establish the chain of title. Mr. Amond attached several affidavits to his opposition to their motion for summary judgment, but failed to attach any exhibits to his own motion for summary judgment. Instead, Mr. Amond refers to exhibits elsewhere in the record.

Louisiana Code of Civil Procedure article 966, which governs motions for summary judgment, was recently amended by 2023 La. Acts. No. 317, § 1, effective August 1, 2023. This court has determined that the 2023 amendments to

---

[5] We further note that the Bordelons first sold the tract that became the Amond property several months before selling the tract that became the Smart property. Had the Bordelons not created a servitude via the first Edwards map, they would have had no access to Wadesboro Road. Further, Errol and Virginia Bordelon each signed affidavits attesting that the driveway at issue was intended to remain as the sole driveway and means of access to the Amond property.

[6] An issue is moot when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." See City of Hammond v. Par. of Tangipahoa, 2007-0574 (La. App. 1 Cir. 3/26/08), 985 So.2d 171, 178.

11

La. C.C.P. art. 966, which expanded the exclusive list of documents that are considered competent evidence in support of or in opposition to a motion for summary judgment and changed the duties of parties in supporting and opposing motions for summary judgment, are substantive and therefore cannot be applied retroactively. See Ricketson v. McKenzie, 2023-0314, p. 7-9 (La. App. 1 Cir. 10/4/23), ___ So.3d ___, ___; see also La. C.C. art. 6 ("In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."). Accordingly, we must apply the version of La. C.C.P. art. 966 in effect at the time of October 31, 2022 hearing on the parties' motions for summary judgment to the matter before us. See Ricketson, 2023-0314 at p. 10, ___ So.3d at ___.

Prior to the 2023 amendments, the trial court could only consider those documents filed in support of or in opposition to the motion for summary judgment.[7] La. C.C.P. art. 966(D)(2). The mover's supporting documents must prove the essential facts necessary to carry the mover's burden. *Troncoso v. Point Carr Homeowners Ass'n*, 2022-0530 (La. App. 1 Cir. 1/10/23), 360 So.3d 901, 914-15. Contrary to the requirements of the applicable version of La. C.C.P. art. 966(D)(2), Mr. Amond failed to file any evidence or documentation in support of the claims asserted in his motion for summary judgment. Because he failed to present sufficient evidence to establish that there were no genuine issues of material fact and that he is entitled to judgment as a matter of law, he did not sustain his own burden of proof. See *James as Co-Trustees of Addison Family Trust v. Strobel*, 2019-0787, p. 10 (La. App. 1 Cir. 6/24/20), 2020 WL 3446635, at *3-4. Moreover, to the extent that Mr. Amond refers to other exhibits appearing in the record, we note that the applicable version of La. C.C.P. art. 966 only allows

---

[7] Following the 2023 amendments, La. C.C.P. art. 966(D)(2) now allows the court to consider documents filed or referenced in support of or in opposition to the motion for summary judgment.

documents filed in support of or in opposition to the motion for summary judgment to be considered by the trial court on a motion for summary judgment. See *Troncoso*, 360 So.3d at 915; see also *James*, 2020 WL 3446635, at *3-4.

Accordingly, we are constrained to reverse the trial court's December 5, 2022 judgment insofar as it grants Mr. Amond's motion for summary judgment. Our ruling in this matter does not prevent Mr. Amond from filing another motion for summary judgment, with appropriate documentary support in accordance with the applicable version of La. C.C. art. 966. See *Troncoso*, 360 So.3d at 915.

## DECREE

For the above and foregoing reasons, we affirm the 21st Judicial District Court's December 5, 2022 judgment insofar as it denies Dr. John K. Smart, M.D., and Mark Christopher Saucier's motion for summary judgment. We reverse the December 5, 2022 judgment insofar as it grants Bryce Amond's motion for summary judgment. Costs of this appeal are to be split equally, with half assessed to Appellants, Dr. John K. Smart, M.D., and Mark Christopher Saucier, and half assessed to Appellee, Bryce Amond.

**AFFIRMED IN PART, REVERSED IN PART.**